UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-17-514-7 |
| DAISY T. RAFOI-BLEULER | § § § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS COUNTS ONE, TWO, AND THREE OF
<u>THE SUPERSEDING INDICTMENT</u>**

**SUMMARY OF ARGUMENT**

The United States, by and through its undersigned attorneys, hereby respectfully requests that the Court deny Defendant Daisy Teresa Rafoi Bleuler's Motion to Dismiss Counts One, Two, and Three of the Superseding Indictment (ECF No. 177) without prejudice to renewal at a time when she appears before the Court. Defendant's claim that she is not a fugitive because "there are [] no facts suggesting she is purposefully absenting herself from the United States in order to avoid arraignment" since she was charged is disingenuous and in blatant contradiction of the facts. Def.'s Mot. to Dismiss (hereinafter "Def.'s Mot.") at 18. Defendant, a Swiss citizen, was arrested in Italy in July 2019 on this Court's warrant and fled to Switzerland to avoid extradition to the United States. Defendant now seeks to invoke the benefits—without risking the burdens—of appearing in this Court by filing a motion to dismiss the Superseding Indictment against her.

Defendant's arguments are that (1) Count Two, which alleged she conspired to violate the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1 *et seq.*, fails due to deficient allegations concerning Defendant's role as an agent of Messrs. Luis Carlos De Leon, Abraham Shiera, Roberto Rincon, and their U.S.-based companies, and (2) Counts One and Three, the money laundering charges, are legally defective because they fail to state an offense as to Defendant and because the substantive money laundering charge (Count Three) in the Superseding Indictment, which involves a transfer of money from an account in the United States to an account in Switzerland, is barred by extraterritorial limitations.

As briefly described below, Defendant's arguments are meritless. But the Court need not reach the merits because Defendant should not be rewarded for actively evading and fleeing from United States jurisdiction.

Count Two charges Defendant with conspiracy to violate the FCPA. The FCPA criminalizes, *inter alia*, any use of interstate commerce by an agent of a domestic concern, "corruptly in furtherance

1

of an offer, payment, promise to pay, or authorization of the payment" of money or anything of value to a foreign official in exchange for obtaining or retaining business. 15 U.S.C. § 78dd-2(a). Defendant argues that the Superseding Indictment includes deficient allegations concerning Defendant's role as an agent of Messrs. De Leon, Shiera, Rincon, and their U.S.-based companies. The Superseding Indictment pleaded that Defendant acted as an agent of multiple domestic concerns in furtherance of a bribery scheme (¶ 11). Defendant's argument that this allegation is deficient fails for two reasons: (1) the Superseding Indictment need do nothing more than track the statutory language and provide a time and date for the defendant's criminal conduct; and (2) the Superseding Indictment, nonetheless, makes clear that the defendant was an agent of certain domestic concerns. *See, e.g., United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998) (*quoting United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984)) ("To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable to accused to prepare [her] defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.").[1]

With respect to Counts One and Three, Defendant misstates the allegations in the Superseding Indictment to suggest that it does not allege any conduct that occurred in the United States or any

---

[1] Separately, the government notes that, even in the event that Defendant were not an agent, the government is not foreclosed from prosecuting her for conspiring with a domestic concern to violate the FCPA in the Fifth Circuit. Courts are divided on the question of whether a non-resident foreign national who has not acted within the territory of the United States and who does not otherwise fall within one of the enumerated categories of individuals included in the statute can conspire with a domestic concern to violate the FCPA under 15 U.S.C. § 78dd-2. *Compare United States v. Firtash*, 392 F. Supp. 3d 872 (N.D. Ill. 2019) (non-resident foreign nationals who have not taken acts within the territory of the United States may be held liable for conspiring to violate the FCPA without falling into one of the enumerated categories in 15 U.S.C. § 78dd-2) *with United States v. Hoskins*, 902 F.3d 69 (2018) (non-resident foreign nationals who have not taken acts within the territory of the United States may only violate the FCPA if they are agents, employees, officers, directors, or stockholders of a domestic concern). The Fifth Circuit has not yet addressed the issue, and the government takes the position that in the context of the FCPA, conspiratorial and accessorial liability apply to all individuals who are not foreign official bribe recipients.

allegations relating to Defendant's own conduct. The Superseding Indictment sufficiently pleads "the elements of the offense[s] charged and fairly informs the defendant of the charge[s] against which [s]he must defend." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)). Moreover, the Superseding Indictment includes specific allegations relating to Defendant's actions with respect to the money laundering allegations, including that Defendant assisted her co-conspirators in opening accounts in Switzerland to "receive bribe payments" (¶ 56), and that that she caused funds to be transferred into those very accounts. The Superseding Indictment further alleges that Rincon Company 2 is a company organized under the laws of Texas and headquartered in the Southern District of Texas, and that it had a bank account in the Southern District of Texas (¶¶ 22, 104, 116, 117). Finally, Count Three notes that the conduct occurred in the Southern District of Texas and elsewhere and the transaction charged in Count Three was in excess of $10,000. (¶ 180). *See* 18 U.S.C. § 1956(f) ("There is extraterritorial jurisdiction over the conduct prohibited by this section if . . . in the case of a non-United States citizen, the conduct occurs in part in the United States; and the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000."). The Superseding Indictment also includes explicit allegations that Defendant possessed the requisite knowledge and intent to enter into the money laundering conspiracy and "causing" and "aiding and abetting" the relevant transfer of $515,513.20 from Rincon Company 2 to Swiss Account 1. Counts One and Three both sufficiently allege an offense committed by the Defendant, and thus her challenges to both fail.

This Court, however, is not required to expend time or resources to respond to and adjudicate Defendant's claims while she remains a fugitive from justice particularly where, as here, Defendant was arrested in a foreign country to begin extradition proceedings, and fled to her home country to avoid facing charges in this case. The fugitive disentitlement doctrine should bar consideration of Defendant's motion until she appears in the United States.

**FACTUAL BACKGROUND**

On April 24, 2019, a grand jury in the Southern District of Texas returned a Superseding Indictment charging Defendant with conspiring to launder money, in violation of 18 U.S.C. § 1956(h); conspiring to violate the FCPA, 15 U.S.C. §§ 78dd-1 *et seq.*, in violation of 18 U.S.C. § 371; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

The charges against Defendant arose from her role in a bribery and money laundering scheme whereby she and her co-defendant Paulo Jorge da Costa Casquiero Murta assisted a group of U.S.-based businessmen, Venezuelan officials, and former Venezuelan officials in laundering and concealing the proceeds of their bribery scheme through the international financial system, including through banks in the United States and in Switzerland. The U.S.-based businessmen, Roberto Rincon and Abraham Shiera, who have been charged separately,[2] paid bribes to a group of Venezuelan officials and former Venezuelan officials—Defendant's co-defendants—in exchange for assistance in corruptly securing energy contracts from Petróleos de Venezuela, S.A. ("PDVSA") and its subsidiaries. PDVSA is Venezuela's state-owned and state-controlled oil and energy company.

On May 9, 2019, the government issued an INTERPOL Red Notice that made information about the criminal charges against Defendant and the pending arrest warrant available to INTERPOL members. On July 12, 2019, based on the INTERPOL Red Notice, Defendant was arrested and taken into custody while on vacation in Lake Como, Italy, pursuant to arrest warrant H-17-5145 issued in this case on April 26, 2019. *See* Order of the Court of Appeals of Milan, Extradition Case No. 87/19 at 2 (Italy, July 26, 2019) (attached hereto, with its English translation, as Exhibit 1). On July 26, 2019,

---

[2] *See United States v. Roberto Enrique Rincon-Fernandez and Abraham Jose Shiera-Bastidas*, No. 4:15-cr-654 (S.D. Tex.).

she was released from custody pursuant to a court order that required her to remain in Italy pending the determination of the United States' extradition request. *Id.* at 5.

On July 13, 2019, undersigned counsel for the government spoke with Defendant's U.S. counsel, who filed the pending motion, for the first time regarding the charges against Defendant. A few days later, on July 16, 2019, the government sent Defendant's counsel a copy of the sealed indictment against Defendant as a courtesy. Subsequently, on August 8, 2019, and August 21, 2019, the government spoke with Defendant's U.S. counsel about the fact that Defendant was no longer in custody in Italy, and Defendant's U.S. counsel inquired about potential bond conditions if she were extradited to the United States.

On August 20, 2019, the United States formally requested Defendant's extradition from Italy, and on January 21, 2020, the Court of Appeals of Milan granted the extradition request. *See* Judgment of the Court of Appeals of Milan, Extradition Case No. 87/19 (Italy, Jan. 21, 2020) (attached hereto, with its English translation, as Exhibit 2). Significantly, in its order granting Defendant's extradition, the Court of Appeals of Milan denied Defendant's request that it lift the prohibition on her leaving Italy:

> It is not possible, in any way, to accept the request, proposed as an alternative, for the revocation of the prohibition to leave the country, for the following reasons. This Court, so as not undermine the extradition of Rafoi to the United States, cannot allow her to leave the national territory. She is therefore subject to the prohibition to leave the country, and this precautionary measure must be maintained.

*Id.* at 10.

Despite the court order requiring her to stay in Italy, on January 28, 2020, Defendant "stated in a notarized affidavit taken in front of a Swiss Notary in Zurich, that she had returned to her country of residence." Supreme Court of Cassation, Sixth Criminal Division, Filed 16 Sept. 2020, Sentence n. div. 638/2020 at 1 (Italy) (attached hereto, with its English translation, as Exhibit 3). Following the receipt of this affidavit, Italian authorities verified that Defendant was no longer at her declared

5

residence in Italy. *Id.* at 2.

Having fled Italy for Switzerland in contravention of a court order, Defendant then filed an appeal from the Italian grant of extradition. *Id.* On June 18, 2020, the Supreme Court of Cassation declared Defendant's sentence of extradition null as she was no longer in Italy and her presence in Italy was required for Italy to be able to fulfill an extradition request. *Id.* Because of Defendant's Swiss citizenship, Switzerland will not extradite her to the United States.

The judgment of the Supreme Court of Cassation was filed on September 16, 2020. *Id.* On October 22, 2020, Defendant's U.S. counsel entered their appearances in the-above captioned case, *see* ECF No. 171, 172, 173, and on October 27, 2020, Defendant filed the instant motion to dismiss the charges against her, ECF No. 177, in which she fails to note that any proceedings had taken place in Italy, and indeed asserts that there are "no facts suggesting that she is purposefully absenting herself from the United States in order to avoid arraignment," Def.'s Mot. at 11.

## ARGUMENT

### A. Defendant Is a Fugitive.

"[T]he fugitive disentitlement doctrine limits a criminal defendant's access to the judicial system whose authority [s]he evades." *Bagwell v. Dretke*, 376 F.3d 408, 410 (5th Cir. 2004). Over the years, the doctrine "has come to signify the unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court." *United States v. Oliveri*, 190 F. Supp. 2d 933, 935 (S.D. Tex. 2001) (Lake, J.). The doctrine traces its origins to a pair of nineteenth-century Supreme Court cases, *Smith v. United States*, 94 U.S. 97 (1876), and *Bonahan v. Nebraska*, 125 U.S. 692 (1887). *See Molinaro v. New Jersey*, 396 U.S. 365 (1970). As the *Smith* Court explained, it is "clearly within [the court's] discretion to refuse to hear a criminal case" unless the defendant "can be made to respond to any judgment we may render." 94 U.S. at 97; *see also Bonahan*, 125 U.S. at 692 (removing case from the Court's docket where the criminal defendant bringing the

6

case had escaped from custody). Courts have been invoking the doctrine ever since, and as the Sixth Circuit recently reiterated "[f]ederal courts do not play 'catch me if you can.'" *United States v. Martirossian*, 917 F.3d 883, 885 (6th Cir. 2019) (upholding application of the fugitive disentitlement doctrine to a motion to dismiss filed by a defendant who, like Defendant, lived abroad in a country that would not extradite him—in that case, China).

"Although the fugitive disentitlement doctrine is often invoked during the appellate process, it also applies to pretrial motions made by fugitives in the district courts." *Oliveri*, 190 F. Supp. 2d at 936 (citing *United States v. Eagleson*, 874 F. Supp. 27, 29-31 (D. Mass. 1994)); *see also Bagwell*, 376 F.3d at 410 ("The Supreme Court first recognized the doctrine over 100 years ago, and the doctrine has since been used by both district and appellate courts to enter judgment against a fugitive defendant or to dismiss the defendant's appeal."). Indeed, courts have been hesitant to expend their time and resources to decide pretrial motions where an unfavorable ruling will have no effect on the defendant. *See Oliveri*, 190 F. Supp. 2d at 936.

"The Supreme Court has recognized a number of different rationales justifying the use of the doctrine." *Bagwell*, 376 F.3d at 411. Ruling on a defendant's case when that defendant is a fugitive may make it "impossible for the court to enforce any judgment that it renders." *Id.* (citations omitted). In addition, the application of the fugitive disentitlement doctrine in appropriate cases furthers important policy interests, including discouraging criminal defendants from fleeing and encouraging voluntary surrender. *Id.* (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 241 (1993)); *see also Oliveri*, 190 F. Supp. 2d at 936. The fugitive defendant's absence also "impedes the ability of a court to adjudicate the proceedings before it," and thus dismissal of the matter brought by the fugitive "furthers the court's 'interest in efficient practice.'" *Id.* (citing *Ortega-Rodriguez*, 507 U.S. at 242). Finally, the defendant's flight "represent[s] an affront to the dignity and authority of the court." *Id.* (citing *Allen v. Georgia*, 166 U.S. 138, 141 (1897)). For all of these reasons, "[i]f a defendant refuses to

7

show up to answer an indictment, ignores an arrest warrant, or leaves the jurisdiction, the court may decline to resolve any objections to the indictment in [her] absence." *Martirossian*, 917 F. 3d at 885.

Defendant availed herself of every opportunity to contest her extradition in Italy. But when she received an unfavorable ruling from the Italian court, she decided to flee Italy rather than face the consequences of extradition. Now, following dismissal of her extradition because she was no longer within Italy's jurisdiction, she is once again turning to a court in which she refuses to appear for adjudication of her claims. Given the history of her arrest and abscondence in Italy, and her refusal to appear in this Court, Defendant is a fugitive. "A fugitive is someone who has been offered process and refuses it." *United States v. Shalhoub*, 855 F.3d 1255, 1264 (11th Cir. 2017) (citing *Black's Law Dictionary* (10th ed. 2014)); *see also Martirossian*, 917 F.3d at 890 ("No one who is indicted and who declines to answer the charges has the right to be labeled a non-fugitive.").

The most obvious example of a fugitive is, of course, someone like Defendant who has physically fled the control of a court. But in the context of the fugitive disentitlement doctrine, the definition of fugitive is broader. Courts have repeatedly held that a defendant who is outside the jurisdiction in which charges were brought may "constructively flee" by avoiding apprehension. *See, e.g.*, *Shalhoub*, 855 F.3d at 1263 (holding that a defendant who stayed in his home country of Saudi Arabia "to avoid apprehension" had constructively fled for the purposes of the fugitive disentitlement doctrine). In this district, a defendant who "is aware of the charges pending against [her] . . . and is purposely absenting [herself] from the United States to avoid arrest and arraignment on the charges" is a fugitive. *Oliveri*, 190 F. Supp. 2d at 936 (citing *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984)).

This concept of constructive flight is applicable even when a defendant, like this Defendant, committed her crimes while outside the United States. *See United States v. Hayes*, 188 F. Supp. 3d 620, 626 (S.D.N.Y. 2015) (taking into account the "realities of modern criminal prosecutions," a defendant

8

who committed his crime while living abroad was not precluded "from being labeled a fugitive as a matter of law"). Indeed, "[a] defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight." *Martirossian*, 917 F.3d at 890 (citing *Shalhoub*, 855 F.3d at 1263); *see also In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014) (explaining that a defendant who "didn't literally flee the United States, since he was never in the United States," was nonetheless a fugitive).

Defendant is not merely "residing in another country," as she would have this Court believe. Def.'s Mot. at 10. She was apprehended in Italy on the charges returned by a grand jury sitting in this district, and the United States' request for her extradition was granted; but before Italian authorities could conclude their appellate process, execute the extradition, and physically transport Defendant to the United States, she fled to Switzerland and then subsequently filed an affidavit with the Italian court arguing that her extradition should be dismissed because she had fled to her home country. Defendant's failure to disclose those facts to this Court strongly suggests that her respect for the rule of law has not increased since her flight from Italy.

With this factual backdrop, it is easy to see how the cases on which Defendant purports to rely—*In re Hijazi*, 589 F.3d 401 (7th Cir. 2009); *United States v. Khoury*, No. 4:17-mc-2553, 2018 WL 2864413 (S.D. Tex. June 11, 2018); and *United States v. Noriega*, 683 F. Supp. 1373 (S.D. Fla. 1988)— offer her no support. Critically, none of the defendants in these cases had fled after arrest. Defendant points to no case, and the government has located none, where a district court has declined to apply the fugitive disentitlement doctrine to a defendant who fled her extradition proceedings after arrest and then sought to dismiss the charges against her from the safety of the nation to which she fled, which, conveniently, does not extradite its own citizens.

The defendant in *In re Hijazi* surrendered to the Kuwaiti authorities when he learned of the indictment against him and posted bond; the "impasse" that confronted the Seventh Circuit in his

9

case was created when the Kuwaiti authorities refused to grant the United States' request for extradition. 589 F.3d at 405. The *Khoury* court emphasized that Khoury had "not absconded from custody" and, because he was "without a public indictment," had "no instruction on how he could submit to custody." 2018 WL 2864413, at *3. Here, in stark contrast to Hijazi and Khoury, Defendant was arrested and flouted the orders of the Italian court considering her extradition case by absconding to Switzerland.[3]

Finally, *Noriega* was an exceptional case, and one that the *Noriega* court itself suggested would be of "minimal" precedential value. *See Noriega*, 683 F. Supp. at 1374. Unlike Defendant, Noriega was the *de facto* head of a foreign government and the case against him was "fraught with political overtones." *Id.* at 1374-75. No such exceptional circumstances exist here. Furthermore, unlike Defendant, Noriega had not fled extradition proceedings. In declining to apply the fugitive disentitlement doctrine, the *Noriega* court emphasized that it was "exercising *discretion*, not stating that as a matter of law any fugitive criminal defendant may contest the validity of his indictment." *Id.* at 1374 (emphasis in original).[4] Indeed, since Noriega was decided in 1988, the fugitive disentitlement doctrine has been repeatedly applied against defendants fleeing our criminal justice system. *See, e.g.,*

---

[3] The government further notes that Defendant is able to formulate arguments on the merits in this case only because, as noted above, the government provided her with a copy of the Superseding Indictment within days of her arrest. At that point, because two of her co-defendants had also been arrested, the Superseding Indictment was unsealed. These facts further distinguish her situation from that of the defendant in *Khoury*. *See* ECF No. 152.

[4] Defendant's claim (Def.'s Mot. at 8-9) that the application of the fugitive disentitlement doctrine in this case would somehow undermine due process is a red herring. Nothing in Justice Kennedy's concurrence in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 278 (1990), cited by Defendant, suggests that a foreign national—who will be afforded constitutional protections in a trial in this country—is somehow entitled to even greater protections and privileges than a U.S. citizen in the event she refuses to answer criminal charges in this country. All fugitives are equally subject to the doctrine.

10

*United States v. Martirossian*, 917 F.3d 883 (6th Cir. 2019); *United States v. Shalhoub*, 855 F.3d 1255 (11th Cir. 2017); *Bagwell v. Dretke*, 376 F.3d 408 (5th Cir. 2004).

Defendant fled her extradition proceedings in Italy, and then sought dismissal of the charges against her without informing the Court of her arrest and subsequent flight in violation of a court order. She is, unquestionably, a fugitive.

### B. Defendant Should Be Denied the Benefit of this Court's Resources as Long as She Refuses to Submit to Its Jurisdiction.

The fugitive disentitlement doctrine is intended for situations precisely like the one currently before the Court. Defendant, like the defendant in *Oliveri*, is a fugitive who "is attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling." *Oliveri*, 190 F. Supp. 2d at 936. If this Court were to address the merits of Defendant's motion, and uphold the charges against her, "such a ruling would have no effect" on Defendant, who could remain safely in Switzerland. *Id.* Conversely, if this Court were to dismiss the charges, Defendant "would obtain a significant benefit from this court at no risk" to herself. *Id.* "Moreover, . . . reaching the merits of a fugitive's pretrial motion may encourage others in the same position to take flight from justice." *Id.*

Defendant was arrested and began the extradition process in accordance with Italian law. But when it became apparent to her that she would not prevail, she decided to disregard Italian law. Defendant has already demonstrated her lack of respect for court orders, and her flight from Italy should not be further rewarded with this Court's time and resources in addressing the substantive arguments in her current motion. Those should be addressed if, and only if, she submits to the jurisdiction of this Court, prepared to accept its ruling adopting—or rejecting—her arguments.

11

## **CONCLUSION**

For these reasons, the United States respectfully requests that Defendant's motion to dismiss Counts One, Two, and Three of the Superseding Indictment be dismissed based on the fugitive disentitlement doctrine without prejudice to renewal when Defendant appears.

In the alternative, and to the extent the Court does not grant the government's request to dismiss Defendant's motion based on the fugitive disentitlement doctrine, the United States requests 30 days from the date of the Court's order to respond to Defendant's motion on the merits. Such an extension would allow the government to fully address Defendant's substantive claims.

Respectfully submitted,

| | |
|---|---|
| DANIEL S. KAHN | RYAN K. PATRICK |
| ACTING CHIEF | UNITED STATES ATTORNEY |
| FRAUD SECTION | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |
| | |
| *s/ Sarah E. Edwards* | *s/ Robert S. Johnson* |
| SARAH E. EDWARDS | ROBERT S. JOHNSON |
| SONALI D. PATEL | ASSISTANT UNITED STATES |
| TRIAL ATTORNEYS | ATTORNEY |
| | |
| Fraud Section, Criminal Division | U.S. Attorney's Office |
| U.S. Department of Justice | Southern District of Texas |
| 1400 New York Avenue, N.W. | 1000 Louisiana, Ste. 2300 |
| Washington, D.C. 20005 | Houston, TX 77002 |
| Tel:   (202) 353-6761 | Tel:   (713) 567-9706 |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 11, 2020, I electronically filed the foregoing response with the Clerk of the Court using the ECF/CM system for filing and service on all counsel of record.

*s/ Sarah E. Edwards*
Sarah E. Edwards
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
