# Ex. #1 English Translation

N. 87/19 Reg. Extrad.



ITALIAN REPUBLIC



[seal of the Italian Republic]

[stamp]
**VERIFIED**
**Milan, this day 07/29/19**
[stamp] The Attorney General
THE ATTORNEY GENERAL
Laura Gay - Deputy

**THE COURT OF APPEALS OF MILAN**
_____

**WEEKDAY SECTION**

Comprised of the following Magistrates:

| | |
|---|---|
| Francesca Vitale | Rapporteur |
| Elena Minici | Judge |
| Maria Greca Zoncu | Judge |

deliberating in council chambers on the early release request submitted by the defense lawyer of **RAFOI BLEULER Daisy Teresa** born in the Fiji Islands on 07/11/1967 **currently detained at the correctional facility of COMO**

in the context of the extradition procedure proposed by the United States District Court of Texas, with arrest warrant N. H-17-5145 issued on 04/26/2019 for the offenses of *bribery and money laundering*

**Given that**

the individual above was arrested on 07/12/2019 under the arrest warrant N. H-17-5145 issued on 04/26/2019 for the offenses of *bribery and money laundering* requesting that RAFOI be delivered based on a restrictive measure of the Judicial authority mentioned above;
the arrest was validated on 07/13/2019 by the President of Section V, who enforced the preliminary detention.

On 07/16/2019 the extraditable individual above was questioned. She stated that she resided in Switzerland, was married with no children, and had assets, that she worked in asset management, had no criminal records nor pending procedures in Italy or elsewhere and **did not consent to the extradition**.



1

On 07/17/2019 – received on 07/19/2019 – the Ministry of Justice sent a note to the Court of Appeals asking, "*under Art. 716, Section 4 c.c.p in order to ensure the delivery to the United States of America, the preventive detention measure should be maintained*" while waiting to receive through diplomatic channels within 45 days from the provisional arrest a formal extradition request and attached documentation.

On 07/16/2019 **RAFOI BLEULER Daisy Teresa's** defense lawyer submitted a request for the **revocation or substitution of the preventive detention**. In order to deliberate on the request, the President of the V section scheduled the hearing in the council chambers before the weekday section for 07/26/2019.

In view of the hearing, the Attorney General, being asked her opinion, objected to the acceptance of the request.
During the hearing in chambers, RAFOI, in the presence of an interpreter, made statements about her family, the asset management company she owned together with her husband, the transparency and the anti-money laundering regulations she followed for managing foreign clients' assets, the cooperation of the Swiss authorities with the US judicial body who had asked for information since 2014. The AG recalled the conclusions already expressed by her office, and the defense lawyer insisted in his request filing minutes of the hearing.

With the request above, the defense lawyer asked primarily the revocation of the measure for the following reasons:
- <u>General and incomplete</u> description of the fact referring to Rafoi as a member of a "*conspiracy to commit bribery*" without indicating the specific conspiracy behaviors or concretely describing any bribery action;
- <u>No specification of the fact</u> since in the description of the facts listed in the request for provisional arrest there is no reference to money laundering acts, which are only mentioned;
- <u>Missing motivated request for provisional arrest by the Department of Justice</u> under Art. 12 of the extradition treaty between Italy and the United States and Art. 715 section 1 c.c.p. and <u>no sign of the forwarding and reception by the Italian Minister of Justice of the request for provisional arrest.</u>
  The violation of that procedure would cause the <u>revocation of the provisional arrest;</u>
- It is also assumed that there is no indication, as required by Art. 12 of the treaty, of the available evidence, with again the consequence of the arrest revocation.

On this regard, the defense lawyer claimed:
- <u>The absence of proofs or evidence regarding the facts charged,</u> and already offered explanations regarding the activities of his client, their legitimacy and legality also based on the controls the asset management company – Eagle – of which she is a partner, applies to its clients and to itself.
- <u>Lack of jurisdiction of the United States,</u> since all the alleged illegal activities were carried out in Switzerland, where Eagle was headquartered and where all activities regarding the management of the clients' portfolios and the investments were performed.
- <u>No flight risk,</u> which would justify the precautionary measure revocation. It is in fact assumed that the lack of ties with the Italian territory in itself is not a <u>concrete</u> flight risk, in consideration of the context of the arrest, that is while the woman was on vacation at a known hotel on the Lake Como. The woman also provided her IDs and paid with traceable methods and also cooperated with the Swiss and US authorities, and at the end with the Italian authorities.



Alternatively, the defense lawyer requests the substitution of the preventive detention with house arrest at an apartment rented for this purpose, of which he provides the address with the minutes of the hearing.
That having been said, the Court states:

The Court cannot deliberate herein on issues regarding the merit of the trial against Rafoi.
Here the Court is called, under Art. 708 c.c.p. only to decide on the revocation or change of the precautionary measure enforced; the conditions for the extradition of the person wanted for delivery must be evaluated elsewhere. That evaluation requires the necessary knowledge of the extradition request and the attached documentation which have to be sent through diplomatic channels within 45 days from the provisional arrest, as established in Art. X of the extradition treaty between Italy and the United States.

Similar considerations are applicable to the presumed lack of jurisdiction of the requesting judicial authority. This issue could possibly be submitted as a complaint only to the Attorney General – Court of Texas, and in no case could be decided by the Italian authorities which have no jurisdiction on this issue, but only on the international cooperation under mutual legal assistance treaties.
That cooperation does not include the evaluation of the procedural regulations of the proceeding Country, except as established under the law (see our procedural code Arts. 698 and 705 c.c.p.) or international conventions (see the provisions regarding the statute of limitation for offenses and punishments, the type of enforceable punishments, the defense guarantees and human rights protection).

Therefore the reasons supporting the request for a change of the precautionary measure at item 2 are rejected.

Regarding the non-compliance with the formal requirements of the request for preventive arrest, since it seems this is what the defense lawyer is claiming at item 1., we should note that issues on regularity of the extradition administrative procedure, including the arrest phase initiated by the Attorney General and the provisional enforcement of a precautionary measure, for lack of formal requirements can and will be discussed at the hearing scheduled under Art. 704 c.c.p.

In any case, had the Court of Appeals deemed the arrest illegal for lack of the requirements under Art. 715 Section 2 c.c.p, the Court would have ordered under Art. 716 Section 3 c.c.p. the release of the detained individual and would not have validated the arrest.
Since the arrest validation cannot be appealed, the arrest must be deemed legal since that is how the Court decided when the extraditable person was made available to the Court.

Any complaint regarding the regularity of the arrest or its validation cannot therefore be accepted.

During the discussion, the defense lawyer objected that there was no questioning as required under Art. 717 Section 2, c.c.p.



3

This complaint is surprising, since the records show the identification report and the consent to the extradition which in the header mentions the provision of Art. 717 c.c.p. and was drafted in the presence of the defense lawyer at the hearing scheduled for this purpose under the law. It is obvious that the term "questioning" only means the collection of personal information prodromal to the extradition since it is intended for obtaining the consent to the extradition and certainly not for the defense against the charge, which could not be performed without the documentation to be sent within 45 days, and, specifically the associated evidence.

If, on the other hand, the defense complaints are intended as an objection to the legitimacy of the preventive detention, we just need to remember that, based on precedents, for the provisional enforcement of precautionary measures by the President of the Court of Appeals, the addition in the searches bulletin of the request for provisional arrest or the circulation of the searches for the provisional arrest by the foreign Country, with the indication of the measure for the restriction of personal freedom – in this case resulting from the first note of the Ministry of Interior 07/11/2019 –, are sufficient for the integration of the condition required under Art. 715 c.c.p. Section 1 Lett. a) (See Cass. Section 6 n. 35048/2005 and n. 46222/2009).

This answers to the complaint, both for the missing or insufficient description of the facts, as well as the omission of the specification of the offense, since it is precisely "a provisional enforcement of precautionary measures" which would be revoked if the extradition request and related attachments are not sent within the time limits.

Regarding the alleged absence of a request by the Department of Justice for the enforcement of the provisional measure (item 1.3 of the instance), it is sufficient to remark that the request is included in the note of the Ministry of Interior, to which this authority reports in its branch of the "Service for international cooperation", on 07/11/2019 which requests the police office to evaluate "**the existence of the conditions and opportunity to proceed under Art. 716 relative to Art. 715 of the c.c.p.**" notifying the involved parties. It is therefore evident that the Ministry expressed a kind of early consent to the urgent arrest and implicitly requested – in case the conditions existed – the enforcement of the precautionary measure.

But a more thorough review of the laws shows how that motivated request by the Department is not even necessary following an urgent arrest by the judicial police, but it is necessary if the measure is intended for an individual for which the extradition request was not received, even without an "urgent arrest".

It is not a coincidence that the measure under Art. 715 c.c.p. regarding the provisional enforcement of coercive measures precedes the measure under Art. 716 c.c.p. Section 3 which, after the validation, "**if the conditions exist**" **gives independently to the Court** the power to "enforce a coercive measure", this power does not derive from the Minister's request but from the urgent arrest.
The conditions are not represented by the existence of the requirements under Art. 715 Section 1, but those of the second section, including, as relevant in this case, the flight risk, the other requirements being fulfilled (see Cass. Section n. 6 above).



4

Also the arguments developed with the hearing minutes regarding the missing proofs, required under Art. 12 of the Treaty, or the statute of limitations for the offense (which is in any case based on speculations regarding the starting date of the US criminal prosecution) are related to a phase subsequent to the phase discussed here, since those are conditions and requirements of the extradition request under Art. 700 c.c.p. to be evaluated at the hearing under Art. 704 Section 1 and once the documentation is received.

The only plea which could be examined is, therefore, the existence of the flight risk.

We can certainly agree with the defense argument that Rafoi does not have a criminal record, that she was arrested in Italy while she was visiting as a tourist, and explanations were asked to and received from the Swiss anti-money laundering body and the Swiss authorities knew the US judicial authorities' interest. However, we must consider that:

The delivery of Rafoi has been asked by a foreign authority for facts which, if proven, are very serious, so much so that the international press reported them;

That the defense allegations – although mostly in a foreign language and therefore not usable for the decision – are not adequate to elide any possibility of a negative judgment regarding the conditions for extradition – ordered, as known, by the Minister and not by this Attorney General who only has the responsibility for evaluating the jurisdiction guarantees under Art. 701 c.c.p.;

That, therefore, waiting for the extradition request, it is necessary to guarantee the presence in the territory of the State of the extraditable person, who could almost certainly leave, even just to go back to her own country, which has extradition rules for its citizens different from the rules established in the treaty between Italy and the United States;

That the compliance with the international cooperation requirements would be nullified by the release of the detained and the consequent return to her home country, especially considering her strong desire not to be extradited to the United States;

That certainly she is not a flight risk in the strict sense of the intention to stealthily escape the extradition measure, but the obstacle to a judgment in that sense would be more easily created just by going back to her country of residence where, while it is true that the woman could be traced, that would not be under the current arrest but a new procedure replicating the current procedure which yielded the result desired by the requesting A.G.;

That, however, in order to protect the requirements above it is sufficient to enforce the measure of prohibition to leave the country, to be applied through administrative measures adequate to prevent her from crossing the national borders.

## THEREFORE

The Court of Appeals of Milan,

substitutes the preventive custody measure against **RAFOI BLEULER Daisy Teresa** with the prohibition to leave the country. Orders the immediate release of **RAFOI BLEULER Daisy Teresa**, unless detained for other reasons.



Refers the execution to the Como police.

To be notified. *The translation at the time of the release by the prison staff has been arranged.*
Milan, 07/26/2019 time 12:55 p.m.

THE JUDGES                    THE PRESIDENT

[signatures]

**COURT OF APPEALS OF MILAN**
**CRIMINAL SECTION**
**Filed at the Clerk's Office**

**This day JULY 26/2019**

[illegible]
[*signed*]

# Ex. #1 Original

*N. 87/19 Reg. Estrad.*

REPUBBLICA ITALIANA





LA CORTE D'APPELLO DI MILANO

**SEZIONE FERIALE**

Composta dai Magistrati:

| | |
|---|---|
| Dr. Francesca Vitale | Presidente rel. |
| Dr. Elena Minici | Consigliere |
| Dr. Maria Greca Zoncu | Consigliere |

deliberando in Camera di Consiglio, sull'istanza di scarcerazione avanzata dalla difesa di **RAFOI BLEULER Daisy Teresa** nata a Isole Fiji l'11.7.1967 **attualmente ristretta presso la casa circondariale di COMO**

nell'ambito della procedura di estradizione proposta dal Governo degli Stati Uniti District Court of Texas con mandato di cattura n. H-17-5145 emesso in data 26.4.2019 per i reati di *corruzione e riciclaggio*

**Premesso**

la predetta è stato arrestata il 12.7.2019 in forza del mandato di cattura n. H-17-5145 emesso in data 26.4.2019 per i reati di *corruzione e riciclaggio* con il quale la RAFOI è chiesta in consegna in forza di provvedimento restrittivo della predetta autorità giudiziaria;
l'arresto è stato convalidato in data 13.7.2019 dal Presidente della sezione V, che aveva applicato la misura cautelare della custodia in carcere.

In data 16.7.2019 si è provveduto all'interrogatorio dell'estradanda, che ha dichiarato di essere residente in Svizzera, di essere coniugata senza figli, di avere beni patrimoniali, di svolgere l'attività di gestione patrimoni, di non avere precedenti penali né pendenze in Italia e all'estero e di **non prestare il consenso all'estradizione**.

In data 17.7.2019 – pervenuta il 19.7.2019 – il Ministero della giustizia inviava nota alla Corte d'appello con la quale chiedeva, *"a norma dell'art. 716 co. 4 c.p.p., allo scopo di assicurare la consegna alle Autorità degli Stati Uniti di America, il mantenimento della misura della custodia cautelare in carcere"* rimanendo in attesa di ricevere per via diplomatica entro 45 giorni dall'arresto provvisorio rituale domanda e documentazione estradizionale.

In data 16.7.2019 la difesa di **RAFOI BLEULER Daisy Teresa** presentava istanza di **revoca o sostituzione della misura cautelare in carcere** per la decisone della quale il presidente della V sezione fissava l'udienza in camera di consiglio avanti la sezione feriale per la data del 26.7.2019.

In vista dell'udienza il procuratore generale, richiestone, esprimeva parere contrario all'accoglimento dell'istanza.

Nel corso dell'udienza camerale la RAFOI, in presenza dell'interprete, rendeva dichiarazioni circa la propria famiglia, la società di gestione patrimoni di cui era socia con il marito, la trasparenza e il rispetto delle norme antiriciclaggio con cui gestiva i cespiti dei clienti esteri, la collaborazione prestata dalla autorità elvetiche con l'organo di giustizia statunitense che aveva chiesto informazioni sin dal 2014. Il Pg si richiamava alle conclusioni già formulate dal proprio ufficio e la difesa insisteva nella propria richiesta depositando note di udienza.

Con la predetta istanza la difesa chiedeva in principalità la revoca della misura per i seguenti motivi:
- <u>Genericità e incompletezza</u> della descrizione del fatto che farebbe riferimento alla appartenenza della Rafoi ad una *"organizzazione per corrompere"* senza l'indicazione delle specifiche condotte partecipative o alcun fatto di corruzione descritto in maniera concreta;
- <u>Omessa specificazione del fatto</u> in quanto nella descrizione dei fatti di cui alla richiesta di arresto provvisorio non vi sarebbe alcun riferimento alla condotta di riciclaggio meramente indicata;
- <u>Difetterebbe la richiesta motivata di arresto provvisorio da parte del Ministero della Giustizia</u> ai sensi dell'art. 12 del trattato di estradizione Italia /USA e dell'art. 715 co. 1 c.p.p. e <u>non vi sarebbe traccia dell'inoltro e della presa in carico da parte del Ministro della Giustizia italiano della richiesta di arresto provvisorio.</u>
La violazione di tale procedura comporterebbe la <u>revoca dell'arresto provvisorio;</u>
- Si assume poi che difetterebbe, ai sensi dell'art. 12 del trattato, l'indicazione delle prove disponibili, la cui conseguenza sarebbe ancora una volta la revoca dell'arresto.

In punto di merito la difesa osservava:
- <u>L'assenza di prove o indizi in merito ai fatti contestati</u> offrendo sin da ora spiegazioni in ordine alla attività della propria assistita, alla sua regolarità e liceità anche alla luce dei controlli cui la società – Eagle - di *asset managment* di cui la stessa è partner, sottopone i propri clienti e lei stessa si sottopone
- <u>La carenza di giurisdizione degli U.S.A.</u> atteso che tutte le pretese attività illecite si sarebbero svolte in Svizzera, luogo ove aveva sede la Eagle e dove vengono svolte tutte le attività di gestione del portafoglio dei clienti e degli investimenti
- <u>La mancanza di pericolo di fuga</u> tale da giustificare la revoca della misura cautelare. Si assume infatti che la mera mancanza di legami con il territorio italiano non rappresenti per se sola un <u>concreto</u> pericolo di fuga e ciò in ragione del contesto in cui l'arresto è avvenuto, vale a dire mentre la donna era in vacanza presso un noto hotel del lago di Como. La stessa avrebbe poi fornito i propri documenti di identità e pagato con mezzi tracciabili oltre ad



avere collaborato con le autorità di controllo svizzere ed americane e, da ultimo, con quelle italiane.

In via subordinata la difesa chiede la sostituzione della custodia cautelare in carcere con gli arresti domiciliari presso un appartamento preso in affitto all'uopo, di cui dava le coordinate con le note d'udienza.
Tanto premesso la Corte osserva:

la sottoposizione alla Corte in questa sede di questioni attinenti al merito della vicenda processuale che ha colpito la Rafoi non può formare oggetto di esame.
Qui la Corte è chiamata, in forza dell'art. 708 c.p.p., solo a decidere sulla revoca o sulla modifica della misura cautelare applicata; altra è la sede in cui dovrà essere vagliata la sussistenza delle condizioni per la estradizione della persona chiesta in consegna. Valutazione che presuppone la necessaria conoscenza della domanda di estradizione e della documentazione a corredo da inviarsi, per via diplomatica, entro il termine di 45 giorni dall'arresto provvisorio, come recita l'art. X del trattato di estradizione Italia/USA.

Considerazioni del tutto analoghe valgono per la ritenuta mancanza di giurisdizione dell'autorità giudiziaria richiedente, questione che potrà eventualmente formare oggetto di doglianza solo davanti a quella A.G. - Court of Texas - e che giammai potrebbe essere decisa dall'Autorità italiana che non è investita del procedimento di merito ma solo della collaborazione internazionale prevista dai trattati in materia penale.
Collaborazione che non investe la valutazione delle norme processuali degli Stati procedenti, se non espressamente previsto dalla legge (v. ns codice di procedura artt. 698 e 705 c.p.p.) o dalle convenzioni internazionali (si vedano le disposizioni in tema di prescrizione dei reati e delle pene, alla natura delle pene comminabili, alle garanzie difensive e dei diritti umani).

Vanno quindi respinti i motivi a sostegno dell'istanza di modifica della misura cautelare di cui al punti 2.

Quanto alla carenza dei requisiti formali della domanda di arresto provvisorio, perché di questo pare occuparsi la difesa al punto 1., merita osservare che le questioni relative alla regolarità della procedura amministrativa di estradizione, compresa la fase dell'arresto su iniziativa della p.g. e della applicazione provvisoria di una misura cautelare, per difetto di requisiti formali potrà e dovrà essere oggetto di discussione all'udienza fissata ex art. 704 c.p.p.

In ogni caso, ove la Corte d'appello avesse ritenuto l'arresto illegittimo per difetto dei requisiti di cui all'art. 715 co. 2 c.p.p., avrebbe disposto ai sensi dell'art. 716 co. 3 c.p.p. la liberazione dell'arrestato e non avrebbe convalidato l'arresto.
Poiché non è prevista impugnazione avverso il provvedimento di convalida dell'arresto, quest'ultimo non può che ritenersi legittimo perché tale è stato ritenuto dalla Corte in sede di messa a propria disposizione dell'estradando.

Ogni doglianza circa la irregolarità dell'arresto o della sua convalida non può quindi trovare ingresso.

In sede di discussione la difesa ha eccepito la mancanza dell'interrogatorio ex art. 717 co. 2 c.p.p.



3

La doglianza sorprende in quanto in atti è presente proprio il verbale di identificazione e di eventuale consenso all'estradizione che, nell'intestazione, richiama proprio la disposizione dell'art. 717 c.p.p. ed è stato redatto alla presenza del difensore all'udienza all'uopo fissata nei termini di legge. È evidente che l'espressione "interrogatorio" è significativa solo della raccolta delle informazioni personali prodromiche alla estradizione tanto che è diretto a raccogliere il consenso all'estradizione e non certo la difesa nel merito dall'imputazione, che non sarebbe attuabile in assenza della documentazione da inviarsi nel termine di 45 giorni e, in particolare, delle relative prove.

Se invece le doglianze difensive devono intendersi dirette a confutare la legittimità della misura cautelare provvisoria, è sufficiente ricordare che per costante giurisprudenza, ai fini dell'applicazione provvisoria di misure cautelari da parte del presidente della Corte d'appello, l'inserimento nel bollettino delle ricerche della richiesta di arresto provvisorio o la diffusione di ricerca per l'arresto provvisorio da parte dello Stato estero, con l'indicazione del provvedimento restrittivo della libertà personale – nella specie risultante dalla prima nota del Ministero dell'interno 11.7.2019 - , è sufficiente ad integrare la condizione richiesta dall'art. 715 c.p.p comma 1 lett. a) (cfr. Cass. sez. 6 n. 35048/2005 e n. 46222/2009).

Ciò risponde alla doglianza sia in punto di omessa o insufficiente descrizione dei fatti sia in punto di omessa specificazione del reato, trattandosi per l'appunto di "applicazione provvisoria di misure cautelari" destinate a caducarsi al mancato inoltro nei termini della domanda di estradizione e relativi allegati.

Quanto alla dedotta mancanza di richiesta da parte del Ministero della Giustizia di applicare la misura in via provvisoria (punto 1.3. dell'istanza), è sufficiente osservare che la richiesta è contenuta nella nota del Ministero degli Interni, cui questa competenza fa capo nella sua diramazione del "Servizio per la cooperazione internazionale", in data 11.7.2019 laddove si legge che si demanda all'ufficio di polizia di valutare "**la sussistenza delle condizioni e l'opportunità di procedere ai sensi dell'art. 716 <u>in relazione al 715 del c.p.p.</u>**" <u>informandone i soggetti interessati.</u>
È dunque evidente che il Ministero ha espresso una sorta di consenso anticipato all'arresto d'urgenza e ha implicitamente formulato richiesta – ove ne ricorressero le condizioni – di applicazione di misura cautelare.

Ma una lettura più attenta delle norme evidenzia come tale richiesta motivata del Ministero non sia neppure necessaria a seguito di un arresto d'urgenza da parte della polizia giudiziaria, ma sia necessaria qualora si intenda sottoporre a misura un soggetto nei cui confronti la domanda di estradizione non sia pervenuta e ciò anche senza sottoporlo ad arresto "nei casi di urgenza".

Non a caso la disposizione dell'art. 715 c.p.p. circa la applicazione provvisoria di misure coercitive precede quella dell'art. 716 c.p.p. comma tre che, dopo la convalida, "**se ne ricorrono i presupposti**", **conferisce autonomamente alla Corte** il potere di "applicazione di una misura coercitiva", potere che non discende dalla richiesta del Ministro ma dall'arresto di urgenza.
I presupposti non sono rappresentati dalla sussistenza dei requisiti di cui all'art. 715 co.1, ma da quelli del secondo comma, tra cui, per quanto qui rileva, il pericolo di fuga, essendo gli altri requisiti stati rispettati (v. Cass. sez. 6 sopra citata).



4

Anche gli argomenti sviluppati con le note di udienza circa la mancata allegazione delle prove a carico, come previsto dall'art. 12 del Trattato, ovvero circa l'intervenuta prescrizione del reato (peraltro fondata su mere ipotesi sulla data dell'inizio del procedimento penale americano) attengono ad una fase successiva a quella in cui ci si muove in questa sede, in quanto costituiscono presupposti e requisiti della domanda di estradizione di cui all'art. 700 c.p.p. da vagliare in sede di udienza ex art. 704 co. 1 e a documentazione pervenuta.

L'unico motivo meritevole di esame è dunque quello della sussistenza o meno del pericolo di fuga.

È certamente condivisibile l'argomentazione difensiva secondo cui la Rafoi non è un soggetto pregiudicato, che è stata arrestata in Italia durante un soggiorno turistico, mentre in Svizzera erano state chieste e fornite spiegazioni dall'organo antiriciclaggio di quel paese e pur conoscendo le autorità elvetiche l'interessamento dell'autorità giudiziaria americana.
Resta tuttavia da considerare che la Rafoi è chiesta in consegna da una autorità straniera per fatti, che se dimostrati, appaiono di notevole gravità, tanto da costituire vicenda che ha occupato la stampa internazionale;
che pertanto le mere allegazioni difensive – peraltro in gran parte in lingua straniera e quindi inutilizzabili per la decisione - non sono idonee a elidere ogni possibilità che la sentenza dichiarativa delle condizioni per l'estradizione – come è noto disposta dal Ministero e non da questa a.g cui è demandato solo il compito di vaglio delle garanzie giurisdizionali ex art.701 c.p.p. – sia negativa;
che pertanto, in attesa della domanda di estradizione, è necessario garantire la presenza dell'estradanda nel territorio dello Stato, il cui rischio di allontanamento, seppure solo rientrando nel proprio paese di residenza, che ha regole di estradizione dei propri cittadini diverse da quelle disciplinate dal trattato tra Italia e USA, è pressoché certo;
che la osservanza degli obblighi di cooperazione internazionale sarebbe vanificata dalla scarcerazione dell'arrestata e dal conseguente ritorno nel paese di origine, soprattutto a fronte di una fermissima volontà di non subire l'estradizione negli Stati Uniti;
che certamente non ricorre il pericolo di fuga in senso stretto come volontà di sottrarsi clandestinamente al provvedimento di estradizione, ma l'ostacolo alla pronuncia di una sentenza in tal senso sarebbe assai più semplicemente realizzato dal semplice rientro nel paese di residenza ove è vero che la donna sarebbe rintracciabile ma non più in forza della odierna cattura ma di una nuova procedura replica di quella già in atto e che ha sortito l'effetto desiderato dalla A. G. richiedente;
che, tuttavia, per salvaguardare le predette esigenze è sufficiente la misura coercitiva del divieto di espatrio dall'Italia da attuarsi mediante i provvedimenti amministrativi idonei a impedirle di varcare i confini nazionali.

**P.Q.M.**

La Corte d'Appello di Milano,

sostituisce la misura della custodia cautelare in carcere nei confronti di **RAFOI BLEULER Daisy Teresa** con il divieto di espatrio. Ordina l'immediata scarcerazione di **RAFOI BLEULER Daisy Teresa,** se non detenuta per altra causa.

Manda per l'esecuzione la questura di Como.

Si comunichi. Si dispone la traduzione a cura del personale del carcere all'atto della scarcerazione.
Milano, 26.7.2019 ore 12.55

I CONSIGLIERI

IL PRESIDENTE

6