# Ex. #2 English Translation

*87/19 EXTR*



*S. 6/20*
*HEAR. 1/21/20*

*[seal of the Italian Republic]*

### ITALIAN REPUBLIC

### In the name of the Italian People

### COURT OF APPEALS OF MILAN

### SECTION V CRIMINAL

*[stamp]*
**VERIFIED**
Milan, this day <u>1/28/20</u>
**The Attorney General**

THE ATTORNEY GENERAL
*Laura Gay ~ Deputy*
*[signed]*

*Comprised of the following Magistrates:*

| | |
|---|---|
| *Franco Matacchioni* | *Rapporteur* |
| *Laura Sola* | *Judge* |
| *Carla Maria Rossi* | *Judge* |

*Rendered the following*

### J U D G E M E N T

*In the matter of the request by the United States of America for the extradition of the Swiss citizen* **RAFOI BLEULER DAISY TERESA**, *born in Viti Levu (Fiji Islands) on July 11, 1967, object of an international arrest warrant for the purpose of extradition dated April 26, 2019 issued by the judicial authorities of the U.S. District Court, Southern District of Texas, for the offenses of conspiracy to commit money laundering in violation of the Foreign Corrupt Practices Act, conspiracy to commit money laundering.*
*Facts committed from 2011 to 2013*

*Address indicated for service: the attorney's address*

*Lawyer chosen by the defendant: Sergio Spagnolo*

*At the end of the hearing held on January 21, 2020 in absence of the interested party*

*Having heard the parties*

*The Court states:*

*With a note dated August 22, 2019, the Ministry of Justice transmitted the request submitted by the United States of America for the extradition of Rafoi Bleuler Daisy Teresa*

*The extraditable person was the object of an arrest warrant (n.H-17-5145) issued on April 26, 2019 by the District Court of the United States for the Southern District of Texas for the offenses of:*

*Count 1): Conspiracy to Commit Money Laundering (Title 18 U.S.C. § 1956(h)) from 2011 until at least 2013, in the Southern District of Texas and elsewhere, in association with Nervis Gerardo Villalobos Cardenas; Alejando Isturiz Chiesa, Rafael Ernesto Reiter Munoz, Javer Alvarado Ochoa*

*Count 2): Conspiracy to commit a violation of the Foreign Corrupt Practices Act, in association with Nervis Gerardo Villalobos Cardenas at least from 2011 until 2013 in the Southern District of Texas and elsewhere (Title 18, U.S.C. § 371);*

*Count 3) Together with Nervis Gerardo Villalobos Cardenas and Javer Alvarado Ochoa, the independent crime of money laundering in the Southern District of Texas and elsewhere (Title 18, U.S.C.);*

*Facts committed on or about October 26, 2011*

*On July 12, 2019 Rafoi was arrested by the Italian authorities for the purpose of extradition to the United States.*

*The arrest was validated the following July 13, 2019. At the hearing of July 16, 2019, Rafoi did not consent to the extradition.*

*The defense lawyer for the extraditable person filed notes ahead of the hearing of July 26, 2019. At the end of the hearing Rafoi Bleuer [sic] Daisy Teresa was released, and the only measure enforced was the prohibition to leave the country.*

*Documentation was transmitted including the arrest warrant, the extradition request with the Affidavit in support of request for extradition, the "Affidavit in support of that request", the superseding indictment, filed on April 24, 2019.*

*Specifically, Rafoi Dajsi [sic] Teresa was charged of participating in a criminal organization to bribe officers of the company Petroleos de Venezuela S.A. ("PDVSA") a Venezuelan state-owned and state-controlled oil company.*

*Officers of PDVSA and other Venezuelan government agencies, in association with Rafoi Teresa, solicited PDVSA vendors, including two vendors who owned and controlled companies incorporated in the United States, including the Southern District of Texas, for bribes and kickbacks in exchange for assistance in obtaining PDVSA contracts and receiving payment priority over other vendors for outstanding PDVSA invoices.*

*Therefore, the United States of America requested the extradition of Rafoi from Italy.*

On August 28, 2019, the Attorney General asked this Court to approve Rafoi Bleuler Daisy Teresa's extradition to the United States.

With a statement of defense submitted on October 11, 2019, Rafoi's lawyer reiterated the request for the rejection of the extradition.

At today's hearing in chambers, the A.G. asked the Court to accept the extradition request and the defense concluded as reported in the minutes.

### DE JURE CONSIDERED

The Board determines that the extradition request is founded and must be accepted, since there are no circumstances preventing it.

ooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooo

-The Court deems preliminarily that no law was violated when the hearing was held on July 16, 2019 under Art. 717 of the Code of Criminal Procedure. In that hearing the personal identification of Rafoi Bleuler Daisy Teresa was obtained, she was asked whether or not she wanted to give her consent to the extradition abroad, which she refused, but also the international arrest warrant against Rafoi was acknowledged together with the offenses for which her extradition was requested, which is an unswerving assumption for obtaining the extraditable person's consent to extradition.

-These extradition proceedings are based on the bilateral treaty on extradition between Italy and the United States of America, signed in Rome on October 13, 1983, as amended with the Bilateral Agreement signed on May 3, 2006.

-The dual criminality requirement applies because the facts prosecuted by the foreign A.G. and at the base of the international arrest warrant against Rafoi dated April 26, 2019 are considered an offense and punishable also by the Italian law, in the United States those offenses are punishable respectively by a maximum sentence of no more than 20 years in prison for the conspiracy to commit money laundering (Count 1), up to five years in prison for the conspiracy (Count 2) and no more than 20 years for money laundering (Count 3).

-The Court also notes that the proper documentation is attached to the extradition request (Art. 12 Paris Convention), including, precisely, the arrest warrant, the Affidavit in support of the request for extradition, the supporting documentation, including the superseding indictment of the U.S. District Court, Southern District of Texas, Houston Division, the Affidavit, which extensively describes the facts charged against the defendant and resulting in the arrest warrant.

-It is clearly indicated (superseding indictment, pages 2 and 3) that from at least 2011 until at least 2013 foreign officers of "Petroleos De Venezuela S.A. ("PDVSA"), that is the Venezuelan state-owned and state-controlled oil company, by the name of Nervis Gerardo Villalobos Cardenas, Alejandro Isturiz Chiesa, Rafael Ernesto Reieter [sic] Munoz, Javer Alvarado Ochoa, Luis Carlos De Leo Peres and Cesar David Rincon Godoy) solicited from PDVSA vendors bribes and kickbacks in exchange for assistance with their PDVSA business, including assistance in obtaining PDVSA contracts and receiving payment priority during the Venezuelan liquidity crisis.

*"The PDVSA Defendants, with the assistance of **DAISY TERESA RAFOI BLEULER** and PAULO JORGE DA COSTA CASQUEIRO MURTA (collectively with the PDVSA Defendants .....) laundered the proceeds of the bribery scheme through numerous financial transactions, including through international wire transfers to and from bank accounts that they opened in Switzerland, Curacao, Dubai, and elsewhere in the names of various companies.*

*The Defendants sought to conceal the nature of the scheme through various complex financial transactions by directing bribe payments to be sent to various recipients other than the PDVSA Defendants, including companies, intermediaries, relatives, friends, creditors, and close personal associates of the PDVSA Defendants."*

*"Rafoi acted as an agent of De Leon...." (page 4).*

*"The manner and means by which Villalobos, Isturiz, Reiter, Alvarado, Rafoi, De Leon, Cesar Rincon, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, ....Rafoi and Cesar Rincon, each and together with others, created false justifications for certain of the bribes, including invoices for services that were never performed, for the purpose of concealing and disguising the nature, source, and ownership of those bribe payments" (pages 11 and 12).*

*Accounts Set-Up*

*"In order to facilitate the bribe payments and conceal their nature and ownership, Shiera introduced De Leon and Villalobos to RAfoi and Swiss Company A for the purpose of setting up Swiss bank accounts into which bribe payments could be received and to assist in providing justifications for the payments.*

*Rafoi assisted with setting up accounts for De Leon, Villalobos, Cesar Rincon, and Alvarado. Ultimately,*

*a number of accounts, in Switzerland and elsewhere, were used in connection with the scheme. These accounts were used to funnel the bribes from, to, and through multiple destinations before reaching their ultimate recipient". (page 14).*

*"Rafoi, the PDVSA Defendants, Shiera, Rincon, and their co-conspirators communicated, including via e-mail, phone, various messaging applications, and meeting in person, about the configuration of the accounts and the need to submit documentation to justify the payments" (page 16).*

*"The Defendants ultimately established a complex web of bank accounts through which to conduct the financial transactions in connection with the scheme and conceal the nature and ownership of the proceeds. On or about September 16, 2011, Rafoi wrote to Shiera, Villalobos, and De Leon to report that Swiss Company A had set up four bank accounts - Swiss Account 1, which Rafoi referred to as the "main account," Swiss Account 2, which Rafoi identified as being for Villalobos, Swiss Account 3, which Rafoi identified as being for De Leon, and Swiss Account 4, which Rafoi identified as being for Alvarado. Rafoi concluded the e-mail by stating, "**We will email you next week the new account numbers and the wiring instructions** to begin the transfer of funds into the main account for distribution into the 3 accounts." (page 17).*

*-Assisted by Nervis Gerardo Villalobos Cardenas and Javer Alvarado Ochia, Daisy Teresa Rafoi Bleuler laundered the money, with a wire transfer of $515,513,20 transmitted from the Rincon company to Swiss Account 1. (page 38).*

*The Affidavit in support of request for extradition states that Rafoi who was a partner of Eagle Wealth Management, a Swiss asset management company with headquarters in Switzerland, was hired by Rincon,*

Shiera, CW 1 and CW 2 to setup a complex web of Swiss bank accounts into which bribe payments could be received, including accounts for CW-1, Villalobos and Alvarado. Each of these three accounts was opened in the name of a Scottish partnership to conceal the true owner.

The Affidavit continues:

"In order to conceal the true nature, source and ownership of the bribe payments that Rincon and Sheira [sic] deposited in the Swiss accounts, Rafoi and CW-2, each and together with others, created false justifications for certain of the bribes, which could be submitted to the banks where the accounts were held. Those justifications included invoices for services that were never performed.

Rafoi, at times, also assisted the management team in using the funds in Swiss Account 1 for expenses incurred by the management team. For example, on or about June 15, 2012, Villalobos instructed Rafoi to transfer CHF 75,000 from Swiss Account 1 to an account in the name of a Law Firm which had provided legal services to Alvarado.

Rafoi, also, transferred funds between the accounts she created for the management team, at the team request. For example, on or about February 16, 2012, CW-1 instructed Rafoi to transfer $4,000,000 from Swiss Account 1 to Swiss Account 3, and $1,400,000 from Swiss Account 1 to Swiss Account 4.

A financial analysis conducted by HIS shows that the accounts controlled by Rincon and Shiera transferred over $27 million to Swiss Account 1, and from there over $27 million were transferred to other accounts used in connection with the scheme" (Affidavit, pages 8 and 9).

*The Court on this point believes that the reasons, extensively explained by the defense of the extraditable person in the statement of defense filed on October 11, 2019, and submitted before this court at today's hearing, in order to avoid the extradition of Rafoi Bleuler Daisy Teresa to the requesting judicial authority, do not achieve the intended purpose for the following reasons.*

*-Rafoi, as mentioned in the statement above (page 5) was indicated by Rincon, Shiera, CW-1 and CW-2, in their testimony, as "hired" and the United States indictment states "to setup a complex web of Swiss bank accounts into which bribe payments could be received",*
*and for this reason she should have been very careful in dealing with those individuals, taking all the necessary measures to realize who she was dealing with and stop any professional relationship with them.*

*Obviously, this does not mean that the extraditable person should be "automatically" found guilty of the felonies charged against her by the Texas judicial authority: This Court cannot and should not investigate this issue.*
*It is evident, that Rafoi's knowledge, even just by dolus eventualis, of what it actually meant to perform the bank and financial transactions requested by the co-defendants "is a key element for the assignment of responsibility" (statement of defense above, page 6).*

*The extradition judge, therefore, believes, based on the documentation produced by the United States of America, that the review of the Italian language contents shows a precise and full picture*

*of evidence of guilt against the Swiss citizen Rafoi Bleuer [sic] Daisy Teresa for the crimes she committed and which are charged by the United States judicial authorities.*

*The extradition is fully justified, since it is before the "natural" judicial authority which initiated the prosecution against her, that the extraditable person can show the lawfulness and appropriateness of her actions.*

oooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooooo

*-No statute of limitation can be applied to any of the offenses charged, and the objection in this regard expressed in the filed statements of defense is unfounded and must be rejected, for the following reasons.*

*It is clearly shown and extensively explained in the Affidavit in support of the extradition for all three accounts, none excluded, that:*

*"Once an indictment has been filed in a federal district court, as with the charges against Rafoi, the statute of limitations is tolled and no longer runs"*

*(Affidavit, pages 7, 10 and 13).*

*-It is clear that the offenses charged against the extraditable person by the A.G. are not political in nature.*

*-There is no issue regarding extradition of nationals (Art. 6 Paris Convention), since the extraditable person is not an Italian citizen.*

*It is the Court's opinion, therefore, that there are no reasons preventing the acceptance of the request for extradition proposed by the Foreign authority, and therefore, the Court declares that the requirements under the law for accepting the request are met.*

*It is not possible, in any way, to accept the request, proposed as an alternative, for the revocation of the prohibition to leave the country, for the following reasons.*

*This Court, so as not undermine the extradition of Rafoi to the United States, cannot allow her to leave the national territory.*

*She is therefore subject to the prohibition to leave the country, and this precautionary measure must be maintained.*

*THEREFORE*

*The Court of Appeals of Milan,*

*Based on Art. 704 c.c.p.*

*declares*

*that there are the conditions for accepting the request submitted by the United States of America on August 20, 2019 for the extradition of Rafoi Daisy Teresa Bleuler.*

*Arranges for the transmission of this judgement to the Ministry of Justice.*

*Milan, this day January 21, 2020*

*Rapporteur*

[stamp]
COURT OF APPEALS OF MILAN
SECTION V CRIMINAL
[handwritten: JUDGEMENT FILED]
Milan, JAN 27, 2020

[stamp]
THE CLERK
THE JUDICIAL OFFICER
*Marco Faverzani*
[*signed*]

# Ex. #2 Original

87/18 ESTR



S. 6/20
VD 21/1/20

*REPUBBLICA ITALIANA*

*In nome del Popolo Italiano*

*CORTE D'APPELLO DI MILANO*

*SEZIONE V° PENALE*

**VISTO**

Milano, lì ......28.1.2020
Il Procuratore Generale

IL PROCURATORE GENERALE
Dott.ssa Laura Gay - sost.

*composta dai seguenti magistrati*

dott. Matacchioni Franco  Pres. rel.
dott.ssa Sola Laura  Cons.
dott.ssa Rossi Maria Carla  Cons.

*ha pronunciato la seguente*

*S E N T E N Z A*

*sulla richiesta di estradizione presentata dal Governo degli Stati Uniti d'America nei confronti della cittadina svizzera RAFOI BLEULER DAISY TERESA, nata a Viti Levu ( Isole Fiji) l'11 luglio del 1967, destinataria di mandato di arresto internazionale ai fini estradizionali del 26 aprile del 2019 emesso dall'autorità giudiziaria di U.S. District Court, Southern District of Texas, per associazione per delinquere volta a commettere riciclaggio di danaro, per associazione per delinquere finalizzata alla violazione della legge americana sulle pratiche di corruzione all'estero (Foereign Corrupt Practices Act), per concorso in riciclaggio.*
*Fatti commessi dal 2011 al 2013*

*elettivamente domiciliata presso il difensore*

*difesa di fiducia dall' avv. Sergio Spagnolo*

*All'esito dell'udienza del 21 gennaio del 2020, svoltasi in assenza dell'interessata*

*Sentite le parti*

*Osserva:*

Con nota del 22 agosto del 2019  il Ministero della Giustizia trasmetteva la domanda di estradizione presentata dal Governo degli Stati Uniti d'America nei confronti di Rafoi Bleuler Daisy Teresa

L'estradanda risultava destinataria di un mandato di cattura (n.H-17-5145)  emesso il  26 aprile del 2019  dal Tribunale Distrettuale degli Stati Uniti d'America per il Distretto Meridionale del Texas per i reati di:

Capo 1): associazione per delinquere ai fini di riciclaggio di denaro (Titolo 18, Codice degli Stati Uniti, Sezione 1956 (h), dal 2011 fino ad almeno il 2013 nel Distretto meridionale del Texas ed altrove), in concorso con Nervis Gerardo Villalobos Cardenas; Alejandro Isturiz Chiesa, Rafael Ernesto Reiter Munoz, I'Javer Alvarado Ochoa

Capo 2)associazione per delinquere finalizzata alla violazione della legge americana sulle pratiche illecite all'estero, in concorso con Nervis Gerardo Villalobos Cardenas Da almeno il 2011 e fino al 2013, nel Distretto meridionale del Texas ed altrove, (Titolo 18, Codice degli Stati Uniti, Sezione 371);

Capo 3) In concorso con Nervis Gerardo Villalobos Cardenas e con Javer Alvarado Ochoa nel reato autonomo di riciclaggio  di denaro nel Distretto meridionale del Texas ed altrove  (titolo 18 Codice degli Stati Uniti);

Fatti commessi intorno al 26 ottobre del 2011

In data 12 luglio del 2019 la predetta veniva arrestata dalle autorità italiane ai fini della estradizione negli Stati Uniti.

L'arresto veniva convalidato il successivo 13 luglio del 2019. All'udienza svoltasi il 16 luglio del 2019 l'arrestata non prestava il consenso all'estradizione.

La difesa dell'estradanda depositava note d'udienza per il 26 luglio del 2019, all'esito della quale Rafoi Bleuer Daisy Teresa veniva rimessa in libertà, residuando il solo divieto di espatrio.

Veniva trasmessa della documentazione contenente il mandato di cattura, la richiesta di estradizione con la dichiarazione giurata a sostegno di richiesta di estradizione, l'"Affidavit a supporto di tale richiesta", il rinvio a giudizio sostitutivo, depositato il 24 aprile del 2019.

In particolare, Rafoi Dajsi Teresa veniva accusata di aver partecipato ad una organizzazione per corrompere funzionari della società Petroleos de Venezuela S.A. ("PDVSA") compagnia di energia statale e controllata dal governo venezuelano.

I funzionari della società PDVSA e di altre agenzie governative venezuelane, in concorso con Rafoi Teresa, sollecitavano i venditori di PDVSA, inclusi due venditori che possedevano e controllavano imprese incorporate negli Stati Uniti, incluso nel Distretto Meridionale del Texas, per tangenti e tangenti in cambio di assistenza nell'assicurare contratti e ricevere priorità di pagamento rispetto ad altri venditori per fatture PDVSA in sospeso.

Domandava, quindi, la Repubblica degli Stati Uniti d'America la estradizione dall'Italia della suddetta Rafoi.

In data 28 agosto del 2019   il Procuratore Generale chiedeva che questa Corte deliberasse in senso favorevole all'estradizione verso gli Stati Uniti d'America   di Rafoi Bleuler Daisy Teresa.

Con memoria dell'11 ottobre del 2019 la difesa di quest'ultima ribadiva la richiesta di rigetto della estradizione.

All'esito dell'odierna udienza camerale il P.G. ha chiesto che la Corte deliberi favorevolmente in relazione alla richiesta estradizione e la difesa ha concluso come da verbale.

## CONSIDERATO IN DIRITTO

Ritiene il Collegio che la domanda di estradizione sia fondata e debba essere accolta, non ravvisandosi alcuna circostanza ostativa.

○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○

-Ritiene preliminarmente la Corte che non si sia verificata  alcuna violazione di legge nel momento in cui veniva, in data 16 luglio del 2019 , celebrata l'udienza ex art.717 c.p.p., ove certamente si è provveduto alla identificazione personale di Rafoi Bleuler Daisy Teresa , certamente è stato chiesto alla stessa se intendeva o meno prestare il consenso alla estradizione per l'estero, dalla stessa negato, ma anche certamente preso atto della sussistenza del mandato di arresto internazionale nei suoi confronti e per quali reati era chiesta la sua estradizione, che costituisce il presupposto indefettibile affinche la persona estradanda presti o meno il suoi consenso alla richiesta estradizione.

-Nel presente procedimento di estradizione trova applicazione il Trattato bilaterale in materia di estradizione tra l'Italia e gli Stati Uniti d'America, sottoscritto a Roma il 13 ottobre del 1983, come modificato con Accordo bilaterale sottoscritto il 3 maggio del 2006.

-Ricorre il requisito della doppia incriminabilità in quanto i fatti per i quali procede l'A.G. straniera e per i quali l'estradanda è stata raggiunta dal mandato di cattura internazionale del 26 aprile del 2019 sono previsti come reato e puniti anche dalla legislazione italiana, negli Stati Uniti con pena massima, rispettivamente, fino ad anni 20 per il complotto al fine di riciclare il denaro (I imputazione), fino ad anni 5 di reclusione per il complotto (II imputazione) e fino ad anni 20 per il riciclaggio di denaro (III imputazione).

-La Corte osserva inoltre che alla domanda di estradizione figurano allegati i documenti di rito (art. 12 Conv. Parigi), tra cui, appunto, il mandato di cattura, la dichiarazione giurata a sostegno della richiesta di estradizione, la documentazione a supporto, tra cui il rinvio a giudizio sostitutivo da parte della Corte Distrettuale degli Stati Uniti, Distretto Meridionale del Texas, Divisione di Houston, l' Affidavit, nei quali vengono descritti esaurientemente i fatti attribuiti alla prevenuta e per i quali è stato emesso il mandato di cattura.

-Viene indicato chiaramente (rinvio a giudizio sostitutivo, pagg. 2 e 3) che da almeno il 2011 e fino ad almeno il 2013 funzionari esteri della "Petroleos De Venezuela S.A ("PDVSA"), vale a dire la società petrolifera di proprietà e controllata dallo stato venezuelano, che rispondono ai nomi di Nervis Gerardo Villaobos Cardenas, Alejan dro Isturiz Chiesa, Rafael Ernesto Reieter Munoz, Javer Alvarado Ochoa, Luis Carlos De Leon Peres e Cesar David Rincon Godoy) chiesero ai venditori PDVSA tangenti e mazzette in cambio di assistenza a proposito delle loro attività PDVSA,

tra cui assistenza nell'ottenere appalti PDVSA e nel ricevere un trattamento prioritario nel pagamento di fatture insolute durante la crisi di liquidità del Venezuela.

"Gli imputati PDVSA, con l'assistenza di DAISY TERESA RAFOI BLEULER e PAULO JORGE DA COSTA CASQUEIRO MURTA (insieme agli imputati PDVSA…) riciclavano quindi i proventi dello stratagemma corrotto attraverso numerose transazioni finanziarie, tra cui bonifici internazionali e da conti bancari aperti in Svizzera, Curacao, Dubai e altrove, a nome di varie aziende.

Gli imputati cercarono di occultare la natura dello stratagemma attraverso diverse transazioni finanziarie complesse ordinando il pagamento di tangenti a vari beneficiari diversi dagli imputati PDVSA, tra cui aziende, intermediari, parenti, amici, creditori e amici degli imputati PDVSA".

"Rafoi agiva come agente di De Leon.." (id, pag.4)

"Le modalità e i mezzi usati da Villalobos, Isturiz, Reiter, Alvarado, Rafoi, De Leon, Cesar Rincon, e i loro complici per raggiungere l'obiettivo dell'associazione per delinquere includevano, tra le altre cose....Rafoi we Cesar Rincon, individualmente e con altri, crearono false giustificazioni per alcune delle tangenti, tra cui fatture per servizi mai resi, allo scopo di occultare e mascherare la natura, la fonte e la proprietà di tali pagamenti di tangenti" (id, pagg. 11 e 12).


"                                        Apertura dei conti

Al fine di agevolare i pagamenti delle tangenti ed occultarne la natura e la proprietà, Shiera presentò De Leon e Villalobos a Rafoi e alla società svizzera A allo scopo di aprire conti bancari svizzeri in cui ricevere i pagamenti delle tangenti ed aiutare a fornire giustificazioni per i pagamenti

Rafoi aiutò con l'apertura di conti per De Leon, Villalobos, Cesar Rincon e Alvarado.

*Alla fin fine, diversi conti, in Svizzera e altrove, furono usati in relazione allo stratagemma, Questi conti furono usati per incanalare tangenti da, ed attraverso diverse destinazioni prima di raggiungere il beneficiario finale". (id, pag.14).*

*"Rafoi, gli imputati PDVSA, Shiera, Rincon e i loro complici comunicarono, con mail, per telefono e vari SMS, discutendo la configurazione dei conti e la necessità di presentare documentazione a giustificazione dei pagamenti" (id, pag.16).*

*"Alla fine gli imputati stabilirono una complessa rete di conti bancari che usavano per condurre transazioni finanziarie nel quadro dello stratagemma e occultare la natura e proprietà dei proventi. Intorno al 16 settembre 2011, Rafoi scrisse a Shiera, Villalobos e De Leon per riferire che la società svizzera A aveva aperto quattro conti bancari- Il conto svizzero 1, che Rafoi chiamava "il conto principale", il Conto svizzero 2, che Rafoi identificava come conto per Villalobos, il Conto svizzero 3, che Rafoi identificava come per conto per De Leon, e il Conto svizzero 4, che Rafoi identificava come conto per Alvarado.*

*Rafoi concluse la mail affermando: "**Vi invieremo la settimana prossima una mail con i numeri dei nuovi conti e le istruzioni per i bonifici**, per iniziare a trasferire i fondi nel conto principale" per la distribuzione nei 3 conti" (id, pag.17).*

*-In concorso con Nervis Gerardo Villalobos Cardenas e Javer Alvarado Ochoa, Daisj Teresa Rafoi Bleuler riciclò il denaro, con un bonifico da 515.513,20 dollari dalla società Rincon al Conto Svizzero1. (id., pag.38).*

*E' scritto nella dichiarazione giurata a sostegno di richiesta di estradizione  che Rafoi, che era una partner di Eagle Wealth Management, una società svizzera di amministrazione patrimoniale con sede a Zurigo, Svizzera, venne assunta da Rincon,*

Shiera, CW-1 e CW-2 per configurare una rete complessa di conti bancari svizzeri in cui ricevere i pagamenti delle tangenti, tra cui in conti per CW-1, Villabolos e Alvarado. Ciascuno di questi tre conti fu aperto a nome di un partenariato scozzese per occultare il vero titolare.

Prosegue la dichiarazione giurata:

"Al fine di occultare la vera natura, fonte e proprietà dei pagamenti di tangenti che Rincon e Sheira versavano nei conti svizzeri, Rafoi e CW-2, ciascuno ed insieme ad altri, crearono false giustificazioni per alcune delle tangenti che potevano essere presentate alle banche in cui erano detenuti i conti. Tali giustificazioni includevano fatture per servizi che non erano mai stati erogati .

Rafoi a volte assisteva anche il team di gestione nell'usare fondi nel Cotno svizzero 1 per spese incorse da membri del team di gestione. Per esempio, intorno al 15 giugno 2012, Villabolos chiese a Rafoi di trasferire 75.000 franchi svizzeri dal conto svizzero 1 a un conto intestato a uno studio legale che aveva fornito servizi legali ad Alvarado.

Rafoi trasferiva, inoltre, fondi tra conti che aveva creato per il team di gestione, su richiesta del team. Per esempio, intorno al  16 febbraio 2012, il CW-1 fornì istruzioni scritte a Rafoi, chiedendole di trasferire 4.000.000 USD dal Conto svizzero 1 al Conto svizzero 3, e 1.400.000 USD dal Conto Svizzero 1 al Conto svizzero 4.

Da un'analisi finanziaria condotta da HSI risulta che i conti controllati da Rincon e Shiera trasferirono oltre 27 milioni di dollari dal Conto svizzero 1 e da lì oltre 27 milioni di dollari furono trasferiti ad altri conti usati nel quadro dello stratagemma"(dichiarazione giurata, pagg.8 e 9).

La Corte, sul punto, ritiene che le ragioni, lungamente esposte dal difensore della estradanda nella memoria difensiva depositata in data 11 ottobre del 2019, e davanti a questa Corte all'odierna udienza, al fine di evitare la estradizione di Rafoi Bleuer Daisy Teresa all'autorità giudiziaria richiedente, non siano in grado di raggiungere lo scopo, per le ragioni che seguono.

-Proprio perché Rafoi, come indicato nella citata memoria (pag.5), era stata indicata da Rincon, Shiera, CW-1 e CW2, che hanno deposto come testimoni, come "assunta" e sostiene l'atto di accusa degli Stati Uniti "per configurare una reste complessa di conti bancari svizzeri in cui ricevere i pagamenti delle tangenti",
avrebbe dovuto rendere la stessa Rafoi Daisy Teresa Bleuler estremamente guardinga verso questi signori, adottando tutte le cautele del caso al fine di accorgersi con chi avesse a che fare ed interrompere ogni rapporto professionale con queste persone.

Questo, ovviamente, non significa che "automaticamente" l'estradanda debba essere considerata colpevole dei delitti gravi alla stessa addebitati dall'autorità giudiziaria del Texas: questa Corte non può e non deve accertarlo.
E' evidente che la consapevolezza o meno di Rafoi, anche solo a titolo di dolo eventuale, di quello che significava veramente porre in essere quelle operazioni bancarie e finanziarie richieste dai correi "è elemento cardine per l'attribuzione di responsabilità" (memoria citata, pag.6).

Il Giudice dell'estradizione ritiene, dunque, sulla base della produzione documentale proveniente dagli Stati Uniti d'America, che emerge, dalla lettura, in lingua italiana, di tutto quello che viene in essa indicato, un quadro accurato ed approfondito di

indizi di colpevolezza a carico della cittadina svizzera Rafoi Bleuer Daisy Teresa in ordine ai delitti ad essa contestati dall'autorità giudiziaria degli Stati Uniti.

È giustificata ampiamente la estradizione, perché sarà davanti all'autorità giudiziaria "naturale", che ha aperto nei suoi confronti un procedimento, che la estradanda potrà dimostrare la correttezza e la liceità del suo operato.

°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°°

- Nessuno dei delitti contestati risulta prescritto, e l'eccezione in tal senso mossa nelle memorie difensive depositate è infondata e deve essere rigettata, per le ragioni che seguono.

È chiaramente e lungamente evidenziato nell'Affidavit a supporto della richiesta di estradizione, per tutti e tre i capi di imputazione, nessuno escluso, che :

"Una volta che l'accusa è stata presentata in un tribunale del distretto federale, come nel caso delle accuse contro Rafoi, il tempo di prescrizione viene sospeso e non continuata ad essere calcolato"

(Affidavit, pagg. 7, 10 e 13).

- È da escludersi che i reati contestati all'estradanda dall'A.G. straniera abbiano natura politica.

- Non si pone questione di estradizione dei nazionali (art. 6 Conv. Parigi), non essendo l'estradanda cittadina italiana.

A parere della Corte non vi sono dunque ragioni ostative all'accoglimento della domanda di estradizione proposta dall'Autorità di Governo estera e pertanto dichiara l'esistenza delle condizioni previste dalla legge per l'accoglimento della richiesta.

Non è possibile, in alcun modo, accogliere la domanda, proposta in via subordinata, di disporre la revoca della misura del divieto di espatrio, per le ragioni che seguono.

Questa Corte, allo scopo di non vanificare la estradizione di Rafoi negli Stati Uniti, non può consentirne l'allontanamento dal territorio nazionale.

E' assoggettata al divieto di espatrio e tale deve rimanere tale misura cautelare.

P.Q.M.

La Corte d'Appello di Milano,

Visto l'art. 704 c.p.p.,

dichiara

l'esistenza delle condizioni per l'accoglimento della domanda di estradizione presentata dal Governo degli Stati Uniti d'America   il 20 agosto del 2019 nei confronti di Rafoi Daisy Teresa Bleuler.

Dispone la trasmissione della presente sentenza al Ministro di Giustizia

Milano, li 21 gennaio del 2020

CORTE D'APPELLO DI MILANO
SEZIONE V PENALE
SENTENZA DEPOSITATA
Milano, 2 7 GEN 2020

IL CANCELLIERE
IL FUNZIONARIO GIUDIZIARIO
Dott. Marco Faverzani

Il Presidente est.