**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:17-cr-00514** |
| | § | |
| **DAISY T. RAFOI-BLEULER** | § | |

**RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL FILING ON**
**DAISY T. RAFOI-BLEULER'S OPPOSED MOTION TO DISMISS**
**COUNTS ONE, TWO, AND THREE OF THE SUPERSEDING INDICTMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................................1

II.     THE FUGITIVE DISENTITLEMENT DOCTRINE DOES NOT BAR
        THIS COURT FROM CONSIDERING MS. RAFOI-BLEULER'S
        MOTION TO DISMISS ................................................................................................2

III.    COUNT TWO IS LEGALLY AND CONSTITUTIONALLY
        DEFECTIVE ................................................................................................................5

        A.      The Superseding Indictment's Allegation That Ms. Rafoi-Bleuler
                Was an Agent of a Domestic Concern is Defective on Its Face. ...........................5

        B.      The Use of the Term "Agent" As Applied to Ms. Rafoi-Bleuler is
                Constitutionally Flawed. ..........................................................................................8

        C.      Ms. Rafoi-Bleuler Is Not Among the Enumerated Categories of
                Covered Persons and Cannot Be Liable for Conspiracy to Violate
                Section 78dd-2. ......................................................................................................10

IV.     COUNTS ONE AND THREE ARE LEGALLY DEFECTIVE........................................16

        A.      Count Three Fails to State an Offense. .................................................................16

        B.      Count Three Must Be Dismissed for Lack of Extraterritorial
                Jurisdiction.............................................................................................................17

        C.      The Conspiracy and Aiding and Abetting Charges in Counts One
                and Three Also Should Be Dismissed. ..................................................................20

V.      CONCLUSION...........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagwell v. Dretke,*
    376 F.3d 408 (5th Cir. 2004) ................................................................................4

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964) .............................................................................................9

*Christiana Trust v. Riddle,*
    911 F.3d 799 (5th Cir. 2018) ...............................................................................7

*Cook v. Hopkins,*
    795 F. App'x 906 (5th Cir. 2019) ........................................................................8

*Gebardi v. United States,*
    287 U.S. 112 (1932) .................................................................................. *passim*

*In re Hijazi,*
    589 F.3d 401 (7th Cir. 2009) ...........................................................................3, 4

*Johnson v. Priceline.com, Inc.,*
    711 F.3d 271 (2d Cir. 2013) .............................................................................7, 9

*Johnson v. United States,*
    576 U.S. 591 (2015) .............................................................................................9

*Ocasio v. United States,*
    136 S. Ct. 1423 (2016) ...........................................................................11, 13, 14

*RJR Nabisco, Inc. v. European Cmty.,*
    136 S. Ct. 2090 (2016) .......................................................................................18

*Salman v. United States,*
    137 S. Ct. 420 (2016) ...........................................................................................9

*United States v. Aleynikov,*
    676 F.3d 71 (2d Cir. 2012) ..................................................................................8

*United States v. Ali,*
    718 F.3d 929 (D.C. Cir. 2013) ..........................................................................20

*United States v. Bronstein,*
    849 F.3d 1101 (D.C. Cir. 2017) ..........................................................................9

*United States v. Castle*,
   925 F.2d 831 (5th Cir. 1991) ............................................................... *passim*

*United States v. Cavalier*,
   17 F.3d 90 (5th Cir. 1994) ......................................................................17

*United States v. Ellender*,
   947 F.2d 748 (5th Cir. 1991) ....................................................................6

*United States v. Firtash*,
   392 F. Supp. 3d 872 (N.D. Ill. 2019) ......................................................16

*United States v. Garcia*,
   533 F. App'x 967 (11th Cir. 2013) ...........................................................19

*United States v. Gayle*,
   342 F.3d 89 (2d Cir. 2003)........................................................................12

*United States v. Gordon*,
   780 F.2d 1165 (5th Cir. 1986) ...................................................................6

*United States v. Hagen*,
   No. 3:19-cr-00146-B, 2020 WL 1929848 (N.D. Tex. Apr. 21, 2020)....................18

*United States v. Hill*,
   279 F.3d 731 (9th Cir. 2002) ...................................................................20

*United States v. Hoskins*,
   902 F.3d 69 (2d Cir. 2018)................................................................. *passim*

*United States v. Hudson*,
   491 F.3d 590 (6th Cir. 2007) ....................................................................6

*United States v. Kay*,
   513 F.3d 432 (5th Cir. 2007) ...............................................................9, 10

*United States v. Khoury*,
   No. 4:17-MC-2553, 2018 WL 2864413 (S.D. Tex. June 11, 2018) ....................2, 3

*United States v. Lake*,
   472 F.3d 1247 (10th Cir. 2007) ..........................................................12, 13

*United States v. Lanier*,
   520 U.S. 259 (1997)...........................................................................9, 10

*United States v. Mann*,
   517 F.2d 259 (5th Cir. 1975) ....................................................................6

*United States v. Miller,*
491 F.2d 638 (5th Cir. 1974) ........................................................................6

*United States v. Saab Moran,*
Case No. 1:19-cr-20450-RNS (S.D. Fla. 2021), *appeal docketed* (11th Cir.
Apr. 1, 2021) ...............................................................................................3

*United States v. Stein,*
No. 93-375, 1994 WL 285020 (E.D. La. June 23, 1994)...............................18, 19

*United States v. Williams,*
553 U.S. 285 (2008)......................................................................................9

*United States v. Yakou,*
428 F.3d 241 (D.C. Cir. 2005) .....................................................................20

**Statutes**

15 U.S.C. § 78dd-2 .........................................................................5, 6, 10

15 U.S.C. § 78dd-3 ...........................................................................15, 16

18 U.S.C. § 2 ...............................................................................16, 17, 20

18 U.S.C. § 371 ..................................................................................6, 11

18 U.S.C. § 1956.......................................................................... *passim*

**Other Authorities**

H.R. Conf. Rep. No. 831 (1977) ......................................................................15

H.R. Rep. No. 105-802 (1988)..........................................................................15

Restatement (Third) of Agency § 1.01 (2006) .....................................................7

S. Rep. No. 99-433 (1986) .............................................................................19

S. Rep. No. 105-277 (1988) ............................................................................15

## I.      INTRODUCTION

Daisy Rafoi-Bleuler is a Swiss citizen and businesswoman who owns and operates a Swiss wealth management firm.  She was born to a middle-class family in Fiji, educated in Australia and Switzerland, and has lived her entire adult life openly in Switzerland.  She has worked extensively in the financial sector including in several international financial institutions specializing in private banking and relationship management for highly valued bank clients. Through those roles she became well-versed in international banking regulations and anti-money laundering compliance regimes.  After working for large financial institutions, Ms. Rafoi-Bleuler and her husband formed a private Swiss family office providing services to high net worth individuals around the globe.

Ms. Rafoi-Bleuler is not a citizen or resident of the United States, and her business did not include travel to the United States.  Her work is covered by Swiss laws and regulations, and there is no allegation that she has acted in violation of those laws or regulations.  Indeed, as set forth in the opening brief, her business operations at issue in this case were overseen by, and compliant with, domestic requirements.  (*See* ECF No. 177 at 3–4 (Opposed Motion to Dismiss Counts One, Two, and Three of the Superseding Indictment ("Mot. to Dismiss")).)

The government charged Ms. Rafoi-Bleuler in a sealed Superseding Indictment with various conspiracy and money laundering counts that stretch the bounds of the statutes in an effort to extend them to foreign nationals.  (*See* ECF No. 129 (Superseding Indictment).)  The Superseding Indictment contains boiler-plate allegations that track statutory language, but it also contains further factual allegations that undercuts the very boiler-plate language that the government cut and paste into the charging document.  For example, the Superseding Indictment

alleges that Ms. Rafoi-Bleuler was an "agent of a domestic concern" for purposes of the U.S. Foreign Corrupt Practices Act ("FCPA"), but the factual recitation contradicts the premise that Ms. Rafoi-Bleuler was an "agent" of the parties who allegedly have connections to the U.S. or this jurisdiction.  Similarly, the Superseding Indictment alleges that Ms. Rafoi-Bleuler had knowledge and intent to commit money laundering, but the factual recitation is conspicuously lacking in any supporting evidence that Ms. Rafoi-Bleuler's knowledge or intent bore the requisite corruption which separates legitimate business from criminal activity.

Ms. Rafoi-Bleuler noted these fatal flaws in her Motion to Dismiss.  In response, the government retreats to an expansive reading of the "sparingly used" fugitive disentitlement doctrine.  *See United States v. Khoury*, No. 4:17-MC-2553, 2018 WL 2864413, at *3 (S.D. Tex. June 11, 2018).  The government urges the Court to avoid a close look at its deficient pleading unless and until Ms. Rafoi-Bleuler voluntarily travels to the United States during a global pandemic and subjects herself to the near-certain deprivation of liberty and financial destruction that would follow such submission.  In taking that position, the government seamlessly intertwines two recent trends for which the United States has received justified criticism in the global court of public opinion—a view that it is the world's policeman and the position that foreign nationals wishing to challenge the U.S. government's authority should be subjected to pre-trial punishment in order to do so.  Neither proposition has legal merit, and this Court should consider, and grant, Ms. Rafoi-Bleuler's Motion to Dismiss the Superseding Indictment.

## II.   THE FUGITIVE DISENTITLEMENT DOCTRINE DOES NOT BAR THIS COURT FROM CONSIDERING MS. RAFOI-BLEULER'S MOTION TO DISMISS

In its original Response to Ms. Rafoi-Bleuler's Motion to Dismiss, the government declined to meaningfully engage on the substance of Ms. Rafoi-Bleuler's Motion, choosing

instead to argue that the Court should decline to consider the merits of her Motion based on the fugitive disentitlement doctrine.  (*See* ECF No. 183.)  Ms. Rafoi-Bleuler then filed her Reply to the government's response.  (*See* ECF No. 184.)

Following submission of the parties' briefs, the Court ordered that "judicial economy dictates that the motion, in its entirety, and response be addressed in a single Memorandum." (Order, ECF No. 185.)  Accordingly, the government filed a supplemental brief in response to Ms. Rafoi-Bleuler's Motion.  (ECF No. 186 (Gov't's Resp. to Def.'s Mot. to Dismiss ("Gov't Supp. Br.")).)  Despite the Court's order that it address the merits of Ms. Rafoi-Bleuler's Motion to Dismiss, the government devoted nearly one-third of its brief to re-arguing the fugitive disentitlement doctrine and urging the Court to avoid consideration of the merits of Ms. Rafoi-Bleuler's Motion.

The government's additional briefing on the fugitive disentitlement doctrine offers no new arguments, and Ms. Rafoi-Bleuler therefore will not repeat all of the points made in her original Reply as to why the government's theories regarding the fugitive disentitlement doctrine miss the mark.[1]  In summary, the government's argument remains focused on the wrong issue—

---

[1] On March 24, 2021, the government filed as supplemental authority (ECF No. 189 (Notice of Supplemental Authority)) the U.S. District Court for the Southern District of Florida's recent decision in *United States v. Saab Moran*, Case No. 1:19-cr-20450-RNS (S.D. Fla. 2021), *appeal docketed* (11th Cir. Apr. 1, 2021).  Following Eleventh Circuit precedent, the district court in *Saab Moran* found that the defendant (who, unlike Ms. Rafoi-Bleuler, was subject to an existing court order conferring fugitive status) had engaged in "constructive flight" because, in part, he was aware of the charges against him, remained abroad, and did not present himself to U.S. authorities.  (ECF No. 189 at 2, 3 (Order, *United States v. Saab Moran*, Case No. 1:19-cr-20450-RNS).)  In so finding, the court, again consistent with Eleventh Circuit precedent, determined not to follow the Seventh Circuit's decision in *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), in which the court concluded that the fugitive disentitlement doctrine did not apply to a defendant who had never been in the jurisdiction and remained in a country that would not extradite him.  (*Id.*)

This Court, however, should decline to follow *Saab Moran*'s analysis, which has been appealed, as inconsistent with existing Fifth Circuit precedent holding that "[c]itizens are not fugitives by virtue of residing in another country."  *See United States v. Khoury*, No. 4:17-MC-2553, 2018 WL 2864413, at *3

that Ms. Rafoi-Bleuler should be declared a fugitive from the United States based on her conduct in Italy and Switzerland—and stretches the already tenuous and expansive reach of the fugitive disentitlement doctrine to an untenable degree.

As detailed in Ms. Rafoi-Bleuler's Motion and Reply, the government's expansive reading of the fugitive disentitlement doctrine ignores the historical underpinnings of the doctrine—to discourage flight from the jurisdiction of the Court.  (*See* ECF No. 177 at 9–11 (Mot. to Dismiss) (citing *Bagwell v. Dretke*, 376 F.3d 408, 410, 413 (5th Cir. 2004)); ECF No. 184 at 6–8 (Reply in Further Support of Opposed Motion to Dismiss Counts One, Two, and Three of the Superseding Indictment ("Reply")).)  The government ignores the fact that Ms. Rafoi-Bleuler never conducted business in the United States and has no physical or business connections to the Southern District of Texas, and urges the Court to declare her a "fugitive" on the basis of her arrest pursuant to an *ex parte* INTERPOL Red Notice and her return to Switzerland following her release in Italy.

But Ms. Rafoi-Bleuler's arrest did not subject her to the jurisdiction of *this* Court such that her later failure to adhere to the terms set by the Italian authorities renders her a fugitive of the United States or the Southern District of Texas.  As Ms. Rafoi-Bleuler has never been within the jurisdiction of this Court, she cannot reasonably be found to have "fled."  *See In re Hijazi*, 589 F.3d 401, 412 (7th Cir. 2009).  Rather, the government seeks to expand the doctrine to apply

---

(S.D. Tex. June 11, 2018).  Moreover, for the reasons stated in Ms. Rafoi-Bleuler's earlier briefing, the Court should follow *Hijazi* in declining to apply the fugitive disentitlement doctrine and considering the merits of Ms. Rafoi-Bleuler's Motion because, among other reasons, Ms. Rafoi-Bleuler is not alleged to have ever entered the Southern District of Texas or to have been present in the United States when the alleged offenses were committed and she, therefore, has not fled the jurisdiction.  *See Hijazi*, 589 F.3d at 412.

to any foreign national, anywhere, who refuses to voluntarily submit to the jurisdiction of the U.S. Federal Court system, thus cementing the Department of Justice as the world's police force.

Such a position ignores the fundamental realities indicted foreign nationals face when seeking to challenge infirm indictments. An individual, like Ms. Rafoi-Bleuler, with no assets in or connections to the United States, will almost certainly face a lengthy period of pre-trial detention on the basis of the government's inevitable arguments about risk of flight. Indeed, the government has not denied such an outcome in either of its extensive briefings on the fugitive disentitlement doctrine, even while noting its prior discussions with counsel regarding potential bond conditions for Ms. Rafoi-Bleuler in the United States. (*See* ECF No. 186 at 4–5 (Gov't Supp. Br.).) The government's use of the fugitive disentitlement doctrine as a cudgel to force foreign defendants to forgo their rights to challenge an indictment, upon pain of an indeterminate period of incarceration, is especially problematic when coupled with an indictment that seeks to impermissibly stretch the Court's jurisdiction to a foreign national like Ms. Rafoi-Bleuler.

For the reasons articulated in Ms. Rafoi-Bleuler's earlier briefing and here, the Court should decline to apply the fugitive disentitlement doctrine and consider Ms. Rafoi-Bleuler's Motion to Dismiss on its merits.

## III.   COUNT TWO IS LEGALLY AND CONSTITUTIONALLY DEFECTIVE

### A.   The Superseding Indictment's Allegation That Ms. Rafoi-Bleuler Was an Agent of a Domestic Concern is Defective on Its Face.

Ms. Rafoi-Bleuler cannot be liable for conspiracy to violate Section 78dd-2 of the FCPA because the Superseding Indictment fails to properly allege that she was an "agent" of a

"domestic concern."[2]  *See United States v. Hoskins*, 902 F.3d 69, 97 (2d Cir. 2018); *United States v. Castle*, 925 F.2d 831, 836 (5th Cir. 1991).  The government's erroneous response that Ms. Rafoi-Bleuler is "raising a factual dispute as to whether she qualifies as an agent" (*see* ECF No. 186 at 17 (Gov't Supp. Br.)) circumvents the issue that the Superseding Indictment is *invalid on its face*.  Likewise, whether the Superseding Indictment sufficiently alleges the elements of the conspiracy statute, 18 U.S.C. § 371, (*see* ECF No. 186 at 14 (Gov't Supp. Br.)) is irrelevant when the government fails to adequately allege that Ms. Rafoi-Bleuler is among the categories of persons that can be charged with conspiracy to violate Section 78dd-2.[3]  Contrary to the government's attempt to re-cast Ms. Rafoi-Bleuler's argument as a factual issue for trial (*see id.* at 17–18), this is precisely an issue within the Court's discretion to consider by pre-trial motion: "Whether the indictment sufficiently alleges a crime is an issue of law, not of fact."  *United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975) (citing *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974)).

The question is whether the allegations match the plain and ordinary meaning of the term "agent"—and not "[w]hether [Ms. Rafoi-Bleuler] is an agent," as the government claims.  (*See* ECF No. 186 at 18 (Gov't Supp. Br.).)[4]  Despite the government's liberal references to Ms. Rafoi-Bleuler as an "agent," the Superseding Indictment's own words undercut any allegation of

---

[2] A "domestic concern" includes U.S. business entities and "any individual who is a citizen, national, or resident of the United States."  15 U.S.C. § 78dd-2(h)(1).

[3] In any event, Ms. Rafoi-Bleuler's opening brief states that the Superseding Indictment does not "sufficiently allege foundational elements of knowledge and intent."  (ECF No. 177 at 2 (Mot. To Dismiss).)

[4] The cases relied upon by the government—including *United States v. Hudson*, 491 F.3d 590 (6th Cir. 2007); *United States v. Ellender*, 947 F.2d 748 (5th Cir. 1991); and *United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986)—involve requests for evidentiary details of the government's case and are irrelevant to Ms. Rafoi-Bleuler's assertion that the allegations do not match the term "agent."

an agency relationship.  As detailed in Ms. Rafoi-Bleuler's opening brief, the Superseding

Indictment's allegations that Ms. Rafoi-Bleuler was an "agent" of Luis Carlos De Leon Perez,

Abraham Jose Shiera Bastidas, Roberto Enrique Rincon Fernandez, and their U.S.-based

companies (ECF No. 129 ¶ 11 (Superseding Indictment)) are contradictory and lack the most

basic features of an agency relationship.  The allegations—which primarily describe Ms. Rafoi-

Bleuler's correspondence with Messrs. Shiera and De Leon regarding certain named Swiss bank

accounts—on their face lack *any* allegation of control necessary for an agency relationship, *see*

*Christiana Trust v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) (citing Restatement (Third) of

Agency § 1.01 cmt. f(1) (2006)), and *at most* describe an "intermediary or middleman"

relationship typical of a contractual service provider, *see Johnson v. Priceline.com, Inc.*, 711

F.3d 271, 279 (2d Cir. 2013).[5]

Moreover, the government fails to explain the clear contradictions upon which its agency

allegations against Ms. Rafoi-Bleuler rest.  For instance, although the Superseding Indictment

alleges that Mr. De Leon provided instructions to Ms. Rafoi-Bleuler regarding the disbursement

of funds between certain named Swiss bank accounts (*see* ECF No. 129 ¶¶ 149, 168), Ms. Rafoi-

Bleuler is not alleged to have been a beneficial owner, controller, or authorized signer of any of

the named Swiss bank accounts (*see id.* ¶¶ 68–76) or to have had any authority to act at the

direction of Mr. De Leon or anyone else to execute transfers of funds between the named Swiss

bank accounts held at a Swiss bank.  The allegations themselves, therefore, contradict the

government's statement that Ms. Rafoi-Bleuler "acted at [the alleged domestic concerns']

---

[5] Even the government characterizes Ms. Rafoi-Bleuler as a "financial intermediary" in its supplemental
brief.  (*See* ECF No. 186 at 25.)

request or direction" (*see* ECF No. 186 at 16 (Gov't Supp. Br.)) and cannot be aligned with any common understanding of agency.

The government's argument that the deferential pleading standard in criminal cases protects an indictment from dismissal if it merely tracks the language of the statute—even when the conduct alleged does not satisfy any rational interpretation of the statutory term—should be rejected.  *See United States v. Aleynikov*, 676 F.3d 71, 76–80 (2d Cir. 2012); *Cook v. Hopkins*, 795 F. App'x 906, 912 (5th Cir. 2019) (court is not required to accept legal conclusion in complaint as true).  The government's attempt to distinguish the Second Circuit's opinion in *United States v. Aleynikov* as resolving an issue of "statutory interpretation" rather than "the factual question whether certain conduct meets an element of a statute" likewise fails because it is precisely an issue of law that Ms. Rafoi-Bleuler is raising.  (*See* ECF No. 186 at 17 (Gov't Supp. Br.).)  In *Aleynikov*, the Second Circuit deemed the indictment "legally insufficient," even though it recited the statutory elements, because the "plain and ordinary" meaning of the "source code" described by the indictment was not a "good" as required by the statute.  676 F.3d at 76, 79.  Here, as in *Aleynikov*, the Superseding Indictment alleges conduct that contradicts the "plain and ordinary" meaning of the term "agent" and legal precedent construing it, and therefore is outside the scope of the FCPA statute.

### B.     The Use of the Term "Agent" As Applied to Ms. Rafoi-Bleuler is Constitutionally Flawed.

The government erroneously conflates Ms. Rafoi-Bleuler's argument that any conclusion that she was an "agent" under the government's theory would render the FCPA unconstitutionally vague *as applied to her* with an argument that the FCPA statute is vague.  (*See* ECF No. 186 at 18–20 (Gov't Supp. Br.).)  Ms. Rafoi-Bleuler's argument is, *first*, that precisely because the term "agent" is facially clear (*see id.* at 18), applying that term to her is contrary to

the statute's plain meaning and would render it unconstitutionally vague as applied to her, *see*

*United States v. Kay*, 513 F.3d 432, 442 (5th Cir. 2007) (citing *Bouie v. City of Columbia*, 378

U.S. 347, 351 (1964)); and *second*, that, because the FCPA has excluded Ms. Rafoi-Bleuler from

among the categories of persons covered by the statute, any interpretation bringing Ms. Rafoi-

Bleuler within its scope would improperly expand the scope of the FCPA, *see United States v.*

*Lanier*, 520 U.S. 259, 267 (1997).

By contrast, the cases cited by the government—including *Salman v. United States*, 137

S. Ct. 420 (2016); *Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Williams*, 553

U.S. 285 (2008); and *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017)—address

whether the relevant criminal statutes, standing alone, were impermissibly vague under the Due

Process Clause.  In *Salman*, for example, the Supreme Court denied petitioner's argument that

the government's position that a "gift" qualifies as a personal benefit to the insider under Section

10(b) of the Securities Exchange Act of 1934 and caselaw applying it created an indeterminate

standard that triggered due process vagueness concerns.  *See* 137 S. Ct. at 428–29; Pet'r's Br. at

41–43, *Salman v. United States*, 137 S. Ct. 420 (May 6, 2016) (No. 15-628).  In *Johnson*, the

Supreme Court held that the so-called "residual clause" of Section 924(e)(2)(B) of the Armed

Career Criminal Act was unconstitutionally vague because it denied fair notice to defendants and

invited arbitrary enforcement by judges.  576 U.S. at 597.  In *Williams*, the U.S. Supreme Court

determined that the relevant statute was not "void for vagueness."  553 U.S. at 304.  Similarly, in

*Bronstein*, the court determined that the statute at issue was not "facially unconstitutional."  849

F.3d at 1105–06.  None of these cases are relevant here.

Moreover, despite the government's attempt to again cast Ms. Rafoi-Bleuler's "agency"

arguments as a factual issue for trial (*see* ECF No. 186 at 18 (Gov't Supp. Br.)), the Superseding

Indictment may properly be challenged for lack of fair warning that the conduct at issue was illegal. *See, e.g.*, *Kay*, 513 F.3d at 440–46. Under no rational reading of the term "agent" could Ms. Rafoi-Bleuler fairly anticipate being brought within the scope of the FCPA as an agent of a domestic concern. *See Lanier*, 520 U.S. at 267 ("[T]he touchstone [of the fair warning analysis] is whether the statute, *either standing alone or as construed*, made it reasonably clear at the relevant time that the conduct was criminal.") (emphasis added). Any interpretation otherwise would deprive her of fair warning.

### C.    Ms. Rafoi-Bleuler Is Not Among the Enumerated Categories of Covered Persons and Cannot Be Liable for Conspiracy to Violate Section 78dd-2.

It is well-settled that the FCPA "defined precisely the categories of persons who may be charged for violating its provisions." *Hoskins*, 902 F.3d at 71. The government does not argue otherwise. (*See* ECF No. 186 at 20 (Gov't Supp. Br.) (referencing "the enumerated categories of persons covered by the [FCPA] statute").) Section 78dd-2 applies only to five categories of natural persons: "[A]ny officer, director, employee, or agent of [a] domestic concern or any stockholder thereof acting on behalf of such domestic concern." 15 U.S.C. § 78dd-2(a), (g)(2)(A). Congress plainly enumerated those categories, and Ms. Rafoi-Bleuler does not fall under any of them.

The government acknowledges an exception to standard conspiracy principles under *Gebardi v. United States*, 287 U.S. 112 (1932), in cases where Congress affirmatively chooses to exclude a certain class of individuals from liability under a criminal statute. (*See* ECF No. 186 at 21 (Gov't Supp. Br.).) In such cases, the government cannot circumvent Congress's clear intent by charging conspiracy to violate the statute. *See Gebardi*, 287 U.S. at 121–23. As the Fifth Circuit observed, because Congress exempted certain categories of persons from direct liability under the FCPA (in that case, foreign officials), it would be "absurd" to take away that

exemption by permitting prosecution for conspiracy under 18 U.S.C. § 371.  *Castle*, 925 F.2d at 833, 836.  Likewise, because Ms. Rafoi-Bleuler is not among any of the categories of persons to whom Congress intended the FCPA to apply, the government "may not expand the extraterritorial reach of the FCPA by recourse to the conspiracy and complicity statutes."  *See Hoskins*, 902 F.3d at 97.

The government's argument that the Court nonetheless should apply "standard conspiracy rules" to impose liability on Ms. Rafoi-Bleuler for "conspiring to violate the FCPA even if she does not fall under the enumerated categories of persons covered by the statute" (ECF No. 186 at 20 (Gov't Supp. Br.)) is contrary to clear congressional intent and precedent applying *Gebardi* in the context of the FCPA.  As discussed below, two circuit courts, including the Fifth Circuit, have considered the *Gebardi* principle specifically in the context of the FCPA text and its legislative history, finding that Congress did not intend for the government to charge individuals with conspiracy to commit FCPA offenses that they were incapable of committing directly.  *See Hoskins*, 902 F.3d at 97; *Castle*, 925 F.2d at 831, 835–36.

The narrow reading urged by the government of *Gebardi* and its progeny to apply only when the defendant's "'consent or acquiescence is inherent in the underlying substantive offense'" (ECF No. 186 at 25 (Gov't Supp. Br.) (quoting *Ocasio v. United States*, 136 S. Ct. 1423, 1432 (2016))) is misplaced here.[6]  The purpose of the *Gebardi* Court's "necessary parties" inquiry was to determine whether "Congress evinced an affirmative legislative policy" to leave a

---

[6] Moreover, the Second Circuit rejected the government's narrow reading of *Gebardi* as being the same as Wharton's Rule in the conspiracy context, a common law principle that disallows liability for conspiracy based on the same agreement required for the substantive crime.  *See Hoskins*, 902 F.3d at 81.  Because the *Gebardi* Court explicitly stated that its reasoning was not based on Wharton's Rule, the government's narrow reading of *Gebardi* is foreclosed.  *See id.* (citing *Gebardi*, 287 U.S. at 122–23).  The government fails to address this fatal flaw in its supplemental brief.

11

party "unpunished" under the relevant statute.  *See Castle*, 925 F.2d at 833; *see also United States v. Lake*, 472 F.3d 1247, 1265 (10th Cir. 2007) (citing *Gebardi* and *Castle*, and considering whether the statute at issue provided "a compelling indication of legislative intent not to punish such a coconspirator").  Congressional intent is not found "whenever a statute focuses on certain categories of persons at the exclusion of others," *Hoskins*, 902 F.3d at 80, notwithstanding the government's exaggerated suggestion to the contrary (*see* ECF No. 186 at 25 (Gov't Supp. Br.)).[7]  Rather, *Gebardi* emphasized that its reasoning was "'concerned with something more than an agreement between two persons for one of them to commit an offense which the other cannot commit.'"  *Hoskins*, 902 F.3d at 80 (quoting *Gebardi*, 287 U.S. at 121).  In addition to the "necessary parties" analysis promoted by the government, that "something more" evidencing congressional intent can also be "discerned by looking to the statute's text, structure, and legislative history."[8]  *See id.* at 81.

Here, Congress's intent to limit the FCPA to clearly delineated categories of persons is evident from the text, structure, and legislative history of the FCPA.  *See Hoskins*, 902 F.3d at 83–84 (analyzing the FCPA's text, structure, and legislative history "reflecting that Congress

---

[7] For this reason, accepting Ms. Rafoi-Bleuler's argument would not "threaten[] to proscribe conspiratorial and accessorial liability for a number of criminal statutes which likewise apply to conduct by officers, directors, employees, and agents," as the government claims.  (*See* ECF No. 186 at 25 (Gov't Supp. Br.).)  It would simply recognize the limits placed by Congress on who may be prosecuted under the FCPA.

[8] Contrary to the government's assertion, the Second Circuit did not "improperly resort" to an analysis of the FCPA's legislative history (*see* ECF No. 186 at 26 (Gov't Supp. Br.)), but rather adhered to "traditional principles of statutory interpretation" and legal precedent in reviewing the legislative history, *see Hoskins*, 902 F.3d at 81 & n.5 (citing *United States v. Gayle*, 342 F.3d 89, 94 (2d Cir. 2003) ("As a general matter, we may consider reliable legislative history where, as here, the statute is susceptible to divergent understandings and, equally important, where there exists authoritative legislative history that assists in discerning what Congress actually meant.")).  Moreover, the government cites the Fifth Circuit's analysis of the FCPA's legislative history in support of its own argument for the application of conspiracy liability.  (*See* ECF No. 186 at 23 (Gov't Supp. Br.).)

drew lines in the FCPA out of specific concern about the scope of extraterritorial application of the statute" and finding the "'something more' that evinces an affirmative legislative policy to leave the category of defendants omitted from the statutory framework unpunished"); *Castle*, 925 F.2d at 833–34, 835.  In *Castle*, the Fifth Circuit rejected the government's narrow interpretation of *Gebardi* as applicable only to "protected" persons, stating that the Supreme Court in *Gebardi* "explicitly built its analysis on Congress' clear intention, evinced by the plain language of the [Mann Act] statute, to exempt the transported women from *all* prosecutions for their involvement in the prohibited activities."  A similar intent is apparent from the language of the FCPA . . . . ."  925 F.2d at 833–34.

By contrast, the cases upon which the government relies apply the *Gebardi* principle to statutes other than the FCPA and in circumstances where courts did not find congressional intent. In *United States v. Lake*, for instance, the court considered whether 15 U.S.C. § 78m provided "a compelling indication of legislative intent not to punish," noting an exception where "it is apparent that a coconspirator should not be criminally liable because of the statutory description of the substantive offense."  472 F.3d at 1265 (citing *Gebardi*, 287 U.S. at 118–23; *Castle*, 925 F.2d at 835).  Reviewing both the statutory language as well as whether the defendant's conduct was inherent in the substantive offense, the court identified no congressional intent to exclude co-conspirator liability.  *See id.* at 1265–67 ("If Congress wishes to limit [conspiracy liability] in certain circumstances, we would expect it to be explicit about what it is doing. . . . [W]e see no reason why Congress would wish to eliminate the liability of coconspirators with respect to violations of § 78m(b)(2).").

*Ocasio v. United States* also does not support the government's argument that *Gebardi* should be narrowly construed in this case.  As the Second Circuit explained in a nearly identical

context in *Hoskins*, "the unique features of the Hobbs Act extortion [the statute at issue] limit *Ocasio*'s helpfulness to the government." 902 F.3d at 83. In *Ocasio*, the Supreme Court rejected the argument that conspiracy liability should be limited, finding that the Hobbs Act did not manifest the "something more" present in *Gebardi*, namely congressional intent to limit liability for the payer of a bribe. *See id.* (citing *Ocasio*, 136 S. Ct. at 1434). Indeed, the language excerpted from *Ocasio* in the government's supplemental brief supports, rather than contradicts, the Second Circuit's interpretation when presented in full (*see* ECF No. 186 at 22 (Gov't Supp. Br.)): "[*Gebardi*] make[s] perfectly clear that a person may be convicted of conspiring to commit a substantive offense that he or she cannot personally commit. [*Gebardi*] also show[s] that when that person's consent or acquiescence is inherent in the underlying substantive offense, something more than bare consent or acquiescence may be needed to prove that the person was a conspirator." *Ocasio*, 136 S. Ct. at 1432. The Second Circuit, therefore, correctly found that *Ocasio* demonstrated a situation where the Court found no affirmative legislative intent to leave bribe payers unpunished rather than a narrowing of the *Gebardi* principle. *Hoskins*, 902 F.3d at 83.

Furthermore, the government's citation to *Castle* for the proposition that the FCPA has a "broad—not narrow—scope" (ECF No. 186 at 26 (Gov't Supp. Br.)) is entirely consistent with Ms. Rafoi-Bleuler's position. The government excerpts *Castle*'s description of the FCPA's legislative history (*id.* at 23), which stated, in full: "In the conference report, the conferees indicated that the bill would reach as far as possible, and *listed all the persons or entities who could be prosecuted. The list includes virtually every person or entity involved*, including foreign nationals who participated in the payment of the bribe when the U.S. courts had jurisdiction over them. *But foreign officials were not included*." *Castle*, 925 F.2d at 835 (citing

14

H.R. Conf. Rep. No. 831 (1977)) (emphasis added).[9]  Yes, and that is precisely the point.  If Congress did not include a person among its list of "virtually every person or entity involved," it "is only logical to conclude that Congress affirmatively chose to exempt this small class of persons from prosecution."  *See id.*

For this reason, the Fifth Circuit in *Castle* declined to "extend the reach of the FCPA through the application of the conspiracy statute," finding that "it would be absurd to take away with the earlier and more general conspiracy statute the exemption from prosecution granted to foreign officials by the later and more specific FCPA."  *Castle*, 925 F.2d at 836.  Similarly, in *Hoskins*, the Second Circuit, applying *Gebardi* and *Castle*, held that "Congress did not intend for persons outside of the [FCPA's] carefully delimited categories to be subject to conspiracy or complicity," *Hoskins*, 902 F.3d at 83–84, including foreign nationals like Ms. Rafoi-Bleuler who act outside the United States and are not agents, employees, officers, directors, or shareholders of a U.S. issuer or domestic concern, *see id.* at 85, 96.

The FCPA's text, structure, and legislative history make clear that Congress intended to exempt foreign nationals such as Ms. Rafoi-Bleuler that fall outside certain designated categories.  Allowing the conspiracy charge to proceed against her implicates precisely the overreach that Congress intended to avoid—that the government would use the conspiracy

---

[9] The government also cites the 1998 amendments to the FCPA and in particular, Congress's pronouncement in enacting 15 U.S.C. § 78dd-3 that "[a]lthough this section limits jurisdiction over foreign nationals and companies to instances in which the foreign national or company takes some action while physically present within the territory of the United States, Congress does not thereby intend to place a similar limit on the exercise of U.S. criminal jurisdiction over foreign nationals and companies under any other statute or regulation."  (ECF No. 186 at 24 (Gov't Supp. Br.) (citing S. Rep. No. 105-277 at 5; H.R. Rep. No. 105-802 at 23).)  The government's reliance is misplaced.  This statement clarifies the FCPA's territorial jurisdiction provision.  The language does not refute the clear evidence of congressional intent to exclude from liability under the FCPA persons that do not fall under its clearly delineated categories.

statute to "ensnare [foreign nationals] with only a tenuous connection to a bribery scheme." *See Hoskins*, 902 F.3d at 95.

The Court, therefore, should dismiss Count Two under *Gebardi*, *Castle*, and *Hoskins*. In doing so, the Court should apply the analysis and correctly decided decision in *Hoskins*, for the reasons stated above.[10] However, should the Court decline to follow *Hoskins*' analysis, the Fifth Circuit's decision in *Castle*, applying *Gebardi*, establishes clear precedent for dismissal.[11]

## IV.   COUNTS ONE AND THREE ARE LEGALLY DEFECTIVE

### A.   Count Three Fails to State an Offense.

Count Three alleges that Ms. Rafoi-Bleuler "did knowingly conduct, and aid, abet, and cause others to conduct," the wire transfer at issue in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. (ECF No. 129 ¶ 180 (Superseding Indictment).) As detailed in her opening brief, the allegation that Ms. Rafoi-Bleuler "conduct[ed]" the wire transfer fails because the Superseding Indictment does not state *any* facts alleging that Ms. Rafoi-Bleuler conducted or attempted to conduct any financial transaction as defined by the statute. *See* 18 U.S.C. § 1956(c)(2) (defining the term, "conducts," to include "initiating, concluding, or participating in initiating, or concluding a transaction"). The government's supplemental brief is silent on this point. It is,

---

[10] The government asks the Court to apply the district court's analysis in *United States v. Firtash*, 392 F. Supp. 3d 872 (N.D. Ill. 2019), which applied Seventh Circuit precedent in declining to follow *Hoskins*. However, not only is the Court not bound by Seventh Circuit precedent, applying the analysis in *Firtash* would contradict the Fifth Circuit's decision in *Castle* that persons exempted by Congress from direct liability under the FCPA cannot be prosecuted for conspiracy. *See Castle*, 925 F.2d at 833, 836.

[11] For the reasons stated above and in Ms. Rafoi-Bleuler's opening brief, the Court also should dismiss the charge of conspiracy to violate Section 78dd-3 against Ms. Rafoi-Bleuler because the government has not properly alleged that Ms. Rafoi-Bleuler was an agent of a domestic concern and she therefore cannot be liable for conspiracy to violate Section 78dd-3 where she is not alleged to have engaged in any conduct in the United States.

thus, clear that the Superseding Indictment fails to state an offense under Section 1956(a)(1)(B)(i).

Rather than address Ms. Rafoi-Bleuler's points above, the government argues that an allegation that she "cause[d] others to conduct" a financial transaction is sufficient to allege a substantive violation of Section 1956(a)(1)(B)(i) because the government also charged aiding and abetting under 18 U.S.C. § 2. (*See* ECF No. 186 at 28–29 (Gov't Supp. Br.) (citing a footnote in *United States v. Cavalier*, 17 F.3d 90, 92 n.2 (5th Cir. 1994)).)  Even under the government's interpretation, the Superseding Indictment fails to state an offense.  As discussed in Ms. Rafoi-Bleuler's opening brief, the Superseding Indictment not only is devoid of any facts alleging that Ms. Rafoi-Bleuler conducted or attempted to conduct the financial transaction at issue, but the allegations, on their face, reveal that Ms. Rafoi-Bleuler could not have conducted or attempted to conduct, let alone caused others to conduct, the transaction.  Among other contradictions, Ms. Rafoi-Bleuler, a partner at a Swiss wealth management firm that is not alleged to be a bank or to have any retail banking capabilities (*see* ECF No. 129 ¶¶ 11, 38 (Superseding Indictment)), is not alleged to have been a beneficial owner, controller, or authorized signer of Swiss Account 1 or any of the other bank accounts named in the Superseding Indictment (*see id.* ¶¶ 68–78).  Nor is she alleged to have had any authority to conduct, or to cause others to conduct, any financial transactions involving these accounts.  The Superseding Indictment itself thus refutes any charge under Section 1956(a)(1)(B)(i).

### B.  Count Three Must Be Dismissed for Lack of Extraterritorial Jurisdiction.

The Superseding Indictment alleges that Ms. Rafoi-Bleuler, a foreign citizen, violated 18 U.S.C. § 1956 by engaging in conduct exclusively in Switzerland involving a transaction that is not properly alleged to have occurred in the United States.  As detailed in Ms. Rafoi-Bleuler's

17

opening brief, these allegations contravene Congress's express limitations on the extraterritorial reach of the statute and must be dismissed.  *See* 18 U.S.C. § 1956(f); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016).

The government contends that a general statement that the entirety of the conduct alleged in Count Three occurred "in the Southern District of Texas and elsewhere" is sufficient to invoke Section 1956(f)'s limited grant of extraterritorial jurisdiction over Ms. Rafoi-Bleuler's conduct. (*See* ECF No. 186 at 29–30 (Gov't Supp. Br.) (citing ECF No. 129 ¶ 180 (Superseding Indictment)).)  This contention fails for several reasons.

*First*, the Superseding Indictment fails to allege that any part of the transaction occurred in the United States.  Because Ms. Rafoi-Bleuler is not a "United States citizen" (*see* ECF No. 129 ¶ 11), the government must properly allege that the "conduct occur[red] in part in the United States."  *See* 18 U.S.C. § 1956(f)(1); *United States v. Stein*, No. 93-375, 1994 WL 285020, at *4 (E.D. La. June 23, 1994) (Section 1956(f) "was intended to reach situations in which *the transaction* occurred in whole or in part in the United States" (internal quotation marks omitted)).  Unlike the indictment in *United States v. Hagen*, upon which the government relies, the Superseding Indictment fails to state even the basic allegation that funds were transferred "from somewhere in the United States to a place outside the United States."  *See Hagen*, No. 3:19-cr-00146-B, 2020 WL 1929848, at *10 (N.D. Tex. Apr. 21, 2020).  Indeed, under any reasonable interpretation, the government's allegation of a wire transfer from "Rincon Company 2"—defined "collectively" to include both a company organized under the laws of Texas and headquartered in the Southern District of Texas *and* its Venezuelan-based affiliate—alleges a transaction originating from *either* the United States *or* from Venezuela.  (*See* ECF No. 129 ¶¶ 22, 180 (Superseding Indictment).)  The government's failure to state *any* allegation linking

18

the transaction itself to the territorial United States cannot be cured by a general statement that the allegations in Count Three occurred "in the Southern District of Texas *and elsewhere*."  (*See id.* ¶ 180 (emphasis added).)[12]

*Second*, not only does the Superseding Indictment fail to allege that the transaction occurred in part in the United States, it fails to allege that Ms. Rafoi-Bleuler engaged in any conduct in the United States.  Count Three, therefore, implicates the exact concerns that Congress intended to avoid in enacting the Money Laundering Control Act of 1986: "It is not the Committee's intention to impose a duty on foreign citizens operating wholly outside the United States to become aware of U.S. laws."  *See* S. Rep. No. 99-433, at 14 (1986).  Although some courts have held that a defendant need not be physically present in the United States to be liable under Section 1956, in each of those cases (including cases cited by the government)—and unlike the wire transfer as alleged here—the defendant initiated or concluded the transactions that originated or terminated in the United States.  *See, e.g.*, *Stein*, 1994 WL 285020, at *5; *United States v. Garcia*, 533 F. App'x 967, 982 (11th Cir. 2013).  Because "[S]ection 1956 was not intended [to], nor does it, apply to actions of a non-United States citizen taken wholly outside the United States," *see Stein*, 1994 WL 285020, at *5, the substantive money laundering charge in Count Three must be dismissed against Ms. Rafoi-Bleuler.

---

[12] The government contends that the Court should deny Ms. Rafoi-Bleuler's Motion to Dismiss for supposedly raising factual issues to be decided at trial (*see* ECF No. 186 at 17, 18 (Gov't Supp. Br.))—which it does not—while, at the same time, stating that Ms. Rafoi-Bleuler's Motion also should be denied on the basis of what its evidence purportedly would establish at trial (*see* ECF No. 186 at 30 (Gov't Supp. Br.)).  This statement should be disregarded.

### C.     The Conspiracy and Aiding and Abetting Charges in Counts One and Three Also Should Be Dismissed.

The conspiracy (18 U.S.C. § 1956(h)) and aiding and abetting (18 U.S.C. § 2) offenses charged in Counts One and Three, respectively, also fail because of the defects in the substantive money laundering charges, discussed above.  The government's arguments to the contrary are unavailing.  Congress did not intend for Section 1956 to apply extraterritorially where neither the alleged transaction nor Ms. Rafoi-Bleuler's conduct occurred in the United States.  *See* Section IV.B., *supra*.  Moreover, ancillary offenses, including conspiracy and aiding and abetting, only confer extraterritorial jurisdiction to the extent of the offenses underlying them.  *See, e.g.*, *Hoskins*, 902 F.3d at 96 (quoting *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) ("Generally, the extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying criminal statute.")); *United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2005) ("The aiding and abetting statute, however, is not so broad as to expand the extraterritorial reach of the underlying statute."); *United States v. Hill*, 279 F.3d 731, 739 (9th Cir. 2002) ("[A]iding and abetting, and conspiracy . . . have been deemed to confer extraterritorial jurisdiction to the same extent as the offenses that underlie them.").  The government cannot circumvent congressional intent by recourse to the conspiracy and aiding and abetting statutes.  Counts One and Three, therefore should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Ms. Rafoi-Bleuler respectfully requests that the Court consider the sufficiency of the Superseding Indictment and dismiss Counts One, Two, and Three against her.

20

Respectfully Submitted,


/s/ Matthew T. Reinhard
Matthew T. Reinhard
Andrew T. Wise
Margot Laporte
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
(202) 626-5800
(202) 626-5801 (FAX)
Admitted *Pro Hac Vice*

/s/ George D. Murphy, Jr.
George D. Murphy, Jr.
Texas State Bar No. 14697990
6750 West Loop South, Suite 845
Bellaire, Texas 77401
(713) 658-1960
(713)  621-0000 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of April, 2021, I electronically filed the foregoing Response to the Government's Supplemental Filing on Daisy T. Rafoi-Bleuler's Opposed Motion to Dismiss Counts One, Two, and Three of the Superseding Indictment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeremy R. Sanders
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005
202-616-2650
Email: jeremy.sanders@usdoj.gov

Robert Searls Johnson
Office of the U.S. Attorney
1000 Louisiana, Ste 2300
Houston, TX 77002
713-567-9706
Email: robert.s.johnson@usdoj.gov

Sarah E. Edwards
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005
202-305-6761
Email: sarah.edwards@usdoj.gov

John Park Pearson
Office of the U.S. Attorney
1000 Louisiana, Ste 2300
Houston, TX 77002
713-567-9000
Email: john.pearson@usdoj.gov

David Adam Last
U.S. Department of Justice
1400 New York Ave, NW
Washington, DC 20005
202-616-5651
Email: David.Last2@usdoj.gov

<u>/s/ Matthew T. Reinhard</u>